ASHEVILLE LAND COMPANY and L. BLOMBERG v. J. H.
LANG et al.

(Filed 11 December, 1907).

1. **Deeds and Conveyances—Calls—Beginning Point—Branch—Evidence.**

    When the first call of a deed is given as "Beginning at a stake on the south bank" of a named branch, and there was evidence tending to show that the branch had changed its bed eighteen feet since the date of the deed, and, also, that it had not changed at all, it is proper for the jury to consider the location of the branch as a means to locate the beginning point in connection with other evidence; and a prayer for instruction that in no aspect of the case can the jury consider the run or thread of the stream as it formerly existed, or as it now exists, was properly refused.

2. **Same—Calls—Beginning Point—Evidence—Map, Corroborative.**

    When there was evidence that when the sale of the *locus in quo* was made there was a survey run for the boundaries set out in the deed, and that the beginning stake was 170 feet from the angle in Depot Street; that, subsequently, where this stake was located the land had been filled in, and afterwards, in paving the street, a stake, apparently a surveyor's stake, was unearthed, answering the location as testified to, and was at once noted down by the city engineer, who made a map and identified it on the trial, on which, at the time, he marked the location of the stake, the map was competent evidence to corroborate the testimony of the city engineer.

3. **Same—Calls—Beginning Point—Evidence—Calls Reversed.**

    When one, at least, of the subsequent calls in a deed was identified, or the jury could properly so find, and the beginning point was the one sought to be established, it was error in the court below to instruct the jury that they could not locate the beginning corner by commencing at the identified call and running back the first two lines according to their courses and distances, the courses reversed, when such would tend to do so.

CIVIL ACTION, tried before *Cooke, J.,* and a jury, at March Term, 1907, of the Superior Court of BUNCOMBE County.

Action of ejectment, over the boundary of a town lot. Both parties claimed under the same source of title. The controversy turned upon the true location of the beginning corner

called for in the Hallyburton deed, as follows: "Beginning at a stake on the south bank of Town Branch, in the eastern edge of Depot Street, said stake being 209 feet east of the Western North Carolina Railroad bridge over said Town Branch." There was evidence offered by plaintiffs to show that, at the date of said Hallyburton deed, the said stake was placed at the edge of the south bank of Town Branch, and that, by actual measurement at that time, this stake was 170 feet from the angle in Depot Street, the end of the first call in said deed; also, that Town Branch had changed its bed 18 feet since the date of the Hallyburton deed by reason of freshets and the filling in of the lot with stone and dirt by the adjacent proprietor and by the city government. The defendants offered evidence that the location of said branch had not been perceptibly changed. A witness for plaintiffs testified that he made the sale to Hallyburton and saw the survey made for the boundaries set out in said deed; that the beginning stake was set 170 feet from the angle in Depot Street. The plaintiffs also offered evidence that, when Depot Street was paved in 1893, in digging down in the made earth 170 feet from said angle, a stake was found at that point which had the appearance of being a surveyor's stake, and the fact was then and there noted down by the city engineer, who made the map identified by said surveyor at this trial, on which, at the time, he marked the location of said stake. This map was offered to corroborate the surveyor, but was rejected on objection by the defendants, and plaintiffs excepted. The evidence was uncontradicted that, after the date of the Hallyburton deed, the lot at the beginning point was filled in several feet deep with stone and dirt. Verdict and judgment for defendants. Appeal by plaintiffs.

*Frank Carter, H. C. Chedester* and *Davidson, Bourne & Parker* for plaintiffs.

*Merrimon & Merrimon* for defendants.

CLARK, C. J.   The plaintiffs excepted for the refusal of the following prayer for instruction: "That in no aspect of the case can you consider the run or thread of the stream as it existed in 1889 (at the date of the Hallyburton deed), or as it now exists, at its intersection with the eastern margin of Depot Street, as defining the beginning corner."   It not having been found or admitted that the stream had changed its location, this prayer could not have been given, though it is true that the doctrine of accretion has no application here. That applies where a stream is a boundary.   In such cases the slow, gradual, imperceptible accretion to the bank from the shifting of the stream belongs to the proprietor on the gaining side, and the stream remains the boundary.   But here the stream is not the boundary.   It is mentioned as one of the means to locate the beginning point of the survey of a town lot whose boundaries were actually run out and marked on the ground, said beginning being further measured at the time as being 170 feet from a certain angle in the road.   The change in said road or location of said angle would not shift the location of the beginning point in the survey of said lot. No more would the shifting of the bed of the stream change the location and boundaries of the lot.   But as there was evidence tending to show that the bed of the stream had not changed, in that event (should the jury so find) its location would be a factor, and the prayer that "in no aspect of the case" should the run of the stream, as it existed at date of the deed or as it exists now, be considered, was properly refused.   Even where the doctrine of accretion applies, if the beginning corner is on the bank of a stream, in running the other lines measurement must be made from "X," where the beginning corner stood at date of deed, else the whole tract would move with the bank of the stream.   But the court erred in excluding the map made by the city surveyor in 1893, whereon at the time he entered the finding of the stake resembling a surveyor's stake at the point where the evidence of the

plaintiffs tended to locate the beginning corner or stake. This evidence was offered to corroborate the testimony of the city engineer and was competent for that purpose.

"After the jury had retired and had been out several hours considering the issues in this case, they came back, and at about 11 o'clock at night asked for further instructions. In reply to their interrogatory as to whether or not they could locate the beginning corner by commencing on the alley and by running back the first two lines according to their courses and distances, the courses reversed, the court replied that they could not." The plaintiffs excepted.

This instruction, taken in connection with the circumstances under which it was given, must have misled the jury into the belief that they could not, under any circumstances nor for any purpose, reverse the two first courses of the Hallyburton deed, whereas, in certain aspects of the case, it was entirely proper for them to have done so. The rule laid down in our authorities is, that the survey, where practicable, must be run out in the same order in which the surveyor, at the time of the deed, made it. But when there is, as here, the search for a lost corner or line, if corners or lines further on are located, the courses and distances may be reversed and run backward to find the lost corner or beginning. In *Harry v. Graham,* 18 N. C., 77, *Ruffin, C. J.,* says: "For example, if this deed had said that the line from the corner chestnut and red oak ran to a black oak near the patentee's other line, and gave neither course nor distance, or only one, and *thence* N. 45 E. 220 poles to a post oak, his own and Beard's corner, the line might be reversed from the post oak to ascertain the corner of that and the next preceding line, because that affords *the only evidence* (the black oak not being found or its locality otherwise identified) of the point at which the one line terminated and the other began." In *Dobson v. Finley,* 53 N. C., 498, *Pearson, C. J.,* says: "Supposing the pine to be established as the second corner, could the first, a beginning corner, be located

by reversing the course and measuring the distance called for from the pine back—that is, on the reversed course? His Honor ruled that the beginning corner could be fixed in this way. We agree with him. If the second corner is fixed, it is clear to a mathematical certainty that by reversing the course and measuring the distance you reach the first corner." Both these cases are cited, approved and followed in *Lindsay v. Austin,* 139 N. C., 467, 468, in which case the authorities are reviewed and the principles applicable are clearly stated by *Mr. Justice Brown,* who also points out that "there is nothing in *Norwood v. Crawford,* 114 N. C., 518, which militates against the position that this is a proper method of determining the beginning corner." The same principle that reversing the line may be resorted to when a lost corner or line cannot be located by proceeding in the regular course is laid down in *Duncan v. Hall,* 117 N. C., 446. Here, one at least of the subsequent calls, the alley way, was identified, or the jury could so find, and, if they did so, the courses and distances could be reversed to locate the beginning.

It is not necessary to consider the other exceptions, as there must be a new trial, since in the above particulars there is found reversible error.

Error.