PATRICK LOCKLEAR v. FRENCH OXENDINE AND WIFE, PEARLIE OXENDINE; CHALMERS OXENDINE, HERBERT OXENDINE, REEDY CHAVIS, JAMES ARTHUR OXENDINE, HOBB JACOBS, OCIE OXENDINE, QUINCEY LOCKLEAR AND CLIFFORD OXENDINE.

(Filed 7 June, 1951.)

**1. Champerty and Maintenance § 2: Reference § 12—**

A champertous contract is void in this State and therefore where defendants set up this defense and the case is referred to a referee who fails to find facts relating to whether plaintiff's claim is champertous, it is error for the court to render judgment for plaintiff without finding the facts or making any conclusions of law in regard thereto.

**2. Trespass to Try Title § 3—**

In an action of trespass to try title, defendants' denial of plaintiff's title and of the trespass places the burden on plaintiff to prove title in himself and the trespass.

**3. Adverse Possession § 9c—**

A party claiming under color of title must fit the description in the deed to the land claimed.

**4. Adverse Possession § 9b—**

Presumptive possession to the outermost boundaries of a deed under which a party claims cannot extend to that part of the land which is in the actual and hostile possession of another.

**5. Adverse Possession § 7—**

A daughter stands in privity to her father, and may tack his adverse possession to her adverse possession.

**6. Tenants in Common § 8—**

 One tenant in common can recover the entire tract against a third party.

APPEAL by defendants, other than D. L. Stewart, from *Grady, Emergency Judge,* at February Criminal Term, 1951 (by consent of all parties), of ROBESON.

Civil action, instituted 4 August, 1948, to recover land, and for damages for trespass thereon, and for injunction against cutting and removing timber therefrom.

Plaintiff alleges, in his amended complaint, that he is the owner of a certain tract of land, located in Smith's Township, Robeson County, North Carolina, specifically described as shown, and being a part of the lands described in the deed from J. A. Stewart to D. L. Stewart, recorded in Book 3-V, page 23, Robeson County Registry; that said lands consist entirely of woods land and located thereon are large quantities of trees, and merchantable timber, and that defendants have unlawfully entered upon said land and engaged in cutting trees, etc., and threaten to continue to do so, to the damage of plaintiff.

Whereupon plaintiff prays that he be declared the owner in fee of said land; that defendants be enjoined from further cutting of trees thereon; and that he recover of defendants damages in specific amount.

While defendants, answering, admit that the land described in the amended complaint is woodland, they deny all other material allegations, —saying particularly that "they have had nothing whatever to do with the cutting of any timber on lands belonging to plaintiff, but that they have been interested in the cutting of timber from certain lands belonging to these defendants prior to August 2, 1948, with which plaintiff is not concerned in any respect whatever."

And for a further defense, defendants aver:

"1. That the defendants are informed and believe that this action is not instituted in good faith on the part of the plaintiff, etc.

"2. The defendants are informed and believe that the said deed is not a *bona fide* purchase and the said deed is without any proper consideration, and that the plaintiff has declared that he has paid nothing for the lands described therein, wherever the same may be located, and that he had an agreement with his grantors that he was to pay nothing therefor, unless he could win the said lands in a lawsuit which was contemplated when said deed was executed, and that the plaintiff took said deed without any Revenue Stamps, and registered the same so as to claim a right to recover the same for the benefit of other people, to wit, the grantors in said deed, and that the said deed is purely speculative and for the purpose of instituting a lawsuit, and in connection therewith the plaintiff says that the plaintiff stated to the defendants when they were cutting timber

LOCKLEAR *v.* OXENDINE.

prior to August 2, 1948, that he had no interest in said lands and that they could go ahead with the cutting as they desired.

"3. The defendants are informed and believe that the plaintiff is not the real party in interest and has no right to maintain this action.

"4. That the aforesaid deed, registered in Book of Deeds 10-0, page 105, in the office of the Register of Deeds of Robeson County, if the same shall be found to cover any of the defendants' lands, is a cloud upon their title to their said lands, and they are entitled to have the same removed therefrom."

In accordance therewith defendants pray judgment, etc.

A compulsory reference was ordered in the case.

Upon hearing before referee the parties stipulated "that this lawsuit does not include and does not affect the lands lying north of the line marked 'E 13.84' on the map between the letters N and A, and south of the line running from the point M to I, on the south as indicated on the map of D. A. Buie, surveyor, although the plaintiff's pleadings do embrace other lands outside of that boundary."

And plaintiff offered in evidence:

1. Deed from D. L. Stewart, Janie Stewart, Emily White and husband A. H. White, to Patrick Locklear, the plaintiff, dated 2 August, 1948, registered, in form in fee simple, with no warranty, and purporting to convey the land described in the amended complaint, and being a part of lands described in deed from J. A. Stewart to D. L. Stewart recorded in Book 3-V, page 23, of Robeson County.

2. Four other deeds (1) from D. L. Stewart and wife Nettie Stewart to Janie Stewart and Emily White, dated 23 March, 1946, and registered 3 August, 1948, (2) from G. B. Patterson to Nettie Stewart, dated 22 March, 1919, and registered, (3) from D. L. Stewart and wife Nettie Stewart to G. B. Patterson, dated 22 March, 1919, and registered, and (4) from J. A. Stewart, John A. Stewart and wife Eliza Stewart, to D. L. Stewart, date not shown, but registered 30 October, 1896, purporting to convey, in pertinent part, specifically or by reference, a boundary of land, as to which the testimony offered by plaintiff tends to show include the lands described in the complaint, and other lands.

3. And plaintiff offered testimony of numerous witnesses as to acts of possession on behalf of D. L. Stewart on various parts of the land both inside and outside the calls of the land as set out in the complaint. Plaintiff, himself, testified in this respect.

In plaintiff's testimony, as appears in the case on appeal, are these statements: (On direct examination): "This suit with French Oxendine was started right after I got the deed from Mr. Stewart . . . about two weeks after. I paid Mr. Stewart something over $400. . . . in consideration of this deed he gave me for this land in dispute. I was to give

him $50.00 an acre outside the swamp, and I have actually paid him a little over $400. He said he would have to finish running the land to see how many acres in the swamp and said he would let me have it for $10."

Then on cross-examination plaintiff said, in pertinent part: "I began this suit before I had this written agreement to purchase; I brought this suit before the agreement was made; I wouldn't be positive whether it was before or after; positive about the agreement. I cannot tell the date I brought this suit. I don't know whether I made this agreement after I got my deed, or not. I am not positive about what time it was . . . I think this agreement was dated August 2, 1948 . . . After this agreement was executed I paid him for the hill land . . . According to my agreement with Mr. Stewart I cannot pay him for it unless I recover this swampland; when he gives me a deed for it I will pay him but not before then. If I lose the land I wouldn't have any right to pay it." P. 66 of the record.

Plaintiff also offered in evidence a written agreement dated 12 August, 1948, purporting to relate to the consideration for the said deed from D. L. Stewart, et al., to plaintiff dated 2 August, 1948.

Plaintiff also offered in evidence deposition of D. L. Stewart, date of its taking not being shown, but in which, after testimony in respect to the land in controversy, he states, among other things, that he was born 7 March, 1859, that until recently he has "been able to be up and about the place"; and that he has "been confined to bed about 12 months."

On the other hand, defendants offered testimony tending to show, in the main, that they, and Arch Bullard, father of defendant Pearlie Oxendine, have had more than twenty years adverse possession of the land claimed by plaintiff.

The referee made findings of fact, on which he concluded that plaintiff is the owner of the land described in the complaint except two small boundaries to which he finds and concludes the defendants French Oxendine and Pearlie Oxendine, by tacking their adverse possession to adverse possession of Arch Bullard, father of Pearlie Oxendine, have had twenty years such possession, and are entitled to be declared the owners thereof in fee simple.

Plaintiff filed specific exceptions to so much of the report as was adverse to him. Defendants did likewise as to so much of the report as was adverse to them—and defendants, also, excepted to the failure of the referee to find facts, and to make conclusions of law in respect to their plea that plaintiff cannot maintain this action on account of the champertous agreement between plaintiff and D. L. Stewart, et al., under whom plaintiff claims title.

The judge of Superior Court, on hearing upon the exceptions filed to the report of referee, after making certain declarations, hereinafter re-

ferred to in pertinent part, sustained the exceptions filed by plaintiff, and overruled all exceptions filed by defendants.

Defendants take specific exception to practically every ruling, finding of fact, and conclusion of law so made by the judge,—and appeal to Supreme Court and assign error.

*McKinnon & McKinnon and F. D. Hackett for plaintiff, appellee.*

*J. E. Carpenter and Varser, McIntyre & Henry for defendants, appellants.*

WINBORNE, J.　A careful consideration of the exceptions covered by the assignments of error presented on this appeal reveal error prejudicial to defendants.

I.　The judge of Superior Court in disposing of defendants' exception to the failure of the referee to find the facts on the evidence bearing upon their plea that the deed to plaintiff from D. L. Stewart, *et al.*, is void in that the consideration therefor is champertous, likewise failed to find the facts, and to make the conclusions of law arising thereon.

Defendants group exceptions thereto, and pertaining thereto, and assign same as error.　We agree, and hold that error appears.

The common law offenses of champerty and maintenance have been considered and condemned in this State.　See *Merrell v. Stuart,* 220 N.C. 326, 17 S.E. 2d 458, where the authorities are discussed and the principles applied.　See also *Martin v. Amos* (1851), 35 N.C. 201; *Barnes v. Strong,* 54 N.C. 100; *Munday v. Whissenhunt,* 90 N.C. 458.　Compare *Smith v. Hartsell,* 150 N.C. 71, 63 S.E. 172; *S. v. Batson,* 220 N.C. 411, 17 S.E. 2d 511; 139 A.L.R. 614, and *Lamm v. Crumpler, post,* 717.

In *Martin v. Amos, supra,* this Court in opinion by *Nash, J.,* had this to say: "The object of all laws is to repress vice and to promote the general welfare of the State; and no one can be assisted by the law in enforcing demands founded on a breach or violation of its principles.　Hence sprung the maxim at common law, *'Ex turpi contractu non oritur actio.'* It is the public good which allows a contract to be impeached for the illegality of the consideration . . . A defendant, therefore . . . may . . . prove that the consideration upon which it was given is illegal, as being immoral or contrary to public policy," and, continuing, "Maintenance is an offense against public justice, and is defined by *Justice Blackstone,* 4 Com. 134, to be 'an officious intermeddling in a suit that no way belongs to one by maintaining or assisting either party, with money or otherwise, to prosecute or defend it, . . . Champerty is a species of maintenance, being a bargain with a plaintiff or defendant to divide the subject in dispute, if they prevail, whereupon the champertor is to carry on the

suit at his own expense' . . . All contracts, then, founded upon either or both of these offenses are absolutely void."

While the applicability of the provisions of G.S. 1-57 may arise upon further hearing, we do not reach it on this record.

II.   Defendants also take exceptions to recitals in the judgment which they contend indicate that the court found the facts in misapprehension of the law applicable to the case,—and assign same as error.   The contention seems to have merit.

When in an action for the recovery of land and for trespass thereon defendant denies plaintiff's title and defendant's trespass, nothing else appearing, issues of fact arise both as to title of plaintiff and as to trespass by defendant,—the burden as to each being on plaintiff.   *Mortgage Corp. v. Barco,* 218 N.C. 154, 10 S.E. 2d 642; *Smith v. Benson,* 227 N.C. 56, 40 S.E. 2d 451.

In such action, plaintiff must rely upon the strength of his own title. This requirement may be met by various methods which are specifically set forth in *Mobley v. Griffin,* 104 N.C. 112, 10 S.E. 142; see also *Prevatt v. Harrelson,* 132 N.C. 250, 43 S.E. 800; *Moore v. Miller,* 179 N.C. 396, 102 S.E. 627; *Smith v. Benson, supra,* and many others.

Moreover, in all actions involving title to real property, title is conclusively presumed to be out of the State unless it be a party to the action, G.S. 1-36, but "there is no presumption in favor of one party or the other, nor is a litigant seeking to recover land otherwise relieved of the burden of showing title in himself.   *Moore v. Miller, supra; Smith v. Benson, supra.*

In the light of such presumption, apparently, plaintiff in the present action, assuming the burden of proof, has elected to show title in himself by adverse possession, under known and visible lines and boundaries and under color of title, which is one of the methods by which title may be shown.   In pursuing this method a deed offered as color of title is such only for the land designated and described in it.   *Davidson v. Arledge,* 88 N.C. 326; *Smith v. Fite,* 92 N.C. 319; *Barker v. R. R.,* 125 N.C. 596, 34 S.E. 701; *Johnston v. Case,* 131 N.C. 491, 42 S.E. 957; *Smith v. Benson, supra.*

In *Smith v. Fite, supra,* this headnote epitomizes the opinion of the Court by *Smith, C. J.,* "Where a party introduces a deed in evidence, which he intends to be used as color of title, he must prove that its boundaries cover the land in dispute, to give legal efficacy to his possession."   In other words, the plaintiff must not only offer the deed upon which he relies, he must by proof fit the description in the deed to the land it covers—in accordance with appropriate law relating to course and distance, and natural objects called for as the case may be.

The general rule as to this is that in order to locate a boundary, the lines should be run with the calls in the regular order from a known beginning, and the test of reversing in the progress of the survey should be resorted to only when the terminus of a call cannot be ascertained by running forward, but can be fixed with certainty by running reversely the next succeeding line. *Lindsay v. Austin,* 139 N.C. 463, 51 S.E. 990; *Land Co. v. Lang,* 146 N.C. 311, 59 S.E. 703; *Hanstein v. Ferrall,* 149 N.C. 240, 62 S.E. 1070; *Cornelison v. Hammond,* 224 N.C. 757, 32 S.E. 2d 326; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366.

Apparently the court, in considering the case, assumed that plaintiff had so located the boundaries of the lands described in the deeds to plaintiff's predecessors in title, on which plaintiff relies as color of title, and in this light, has considered evidence of possession outside the *locus in quo* as extending constructively to the *locus in quo.*

Furthermore, the court declared, "It is common learning that the possession of any part of the land described in his deed is constructive possession of the entire tract, against all persons, except those having a superior title to the part which is held only by constructive possession."

This declaration is not entirely in accord with what is held in the recent case of *Wallin v. Rice,* 232 N.C. 371, 61 S.E. 2d 82. The head-note there expresses the holding in this manner: "While the possession of one entering upon lands under a deed describing same by metes and bounds is constructively extended to the outermost bounds set out in the deed, such constructive possession does not cover that portion of the land in the actual adverse possession of another, and therefore possession of a part of the boundary described in a deed for more than twenty years does not preclude a claim of adverse possession of a part of the tract by the owner of contiguous lands who has introduced evidence of actual, continuous and hostile possession of such part under known and visible lines and boundaries for more than twenty years." See also *Currie v. Gilchrist,* 147 N.C. 648, 61 S.E. 581, as to lappages.

III. The referee found as a fact, and concluded as a matter of law that defendants French Oxendine and Pearlie Oxendine are entitled to tack their adverse possession to the adverse possession of Arch Bullard, father of Pearlie Oxendine, in order to establish title to a certain portion of the disputed land, etc. Plaintiff excepted thereto. Defendants excepted also, for that the finding, and conclusion were limited to only a part of the *locus in quo.* The court overruled both the finding and the conclusion of the referee.

In this connection, the court said: "The sole question presented to the court was whether or not French Oxendine and his wife had been in the adverse possession of the lands in question for the statutory period of 20 years."

However, the principle prevails in this State that several successive possessions may be tacked for the purpose of showing a continuous adverse possession where there is privity of estate or connection of title between the several occupants. A daughter stands in privity to her father, and may tack his adverse possession to her adverse possession to ripen title by adverse possession. See *Ramsey v. Ramsey,* 224 N.C. 110, 29 S.E. 2d 340.

Moreover, one tenant in common can recover the entire tract against a third person. See *Winborne v. Lumber Co.,* 130 N.C. 32, 40 S.E. 825, and cases cited.

For reasons pointed out, the judgment from which appeal is taken will be and is set aside, and the cause is remanded for further proceedings as to justice appertains, and the rights of the parties may require. *Hanford v. McSwain,* 230 N.C. 229, 53 S.E. 2d 84; *Perkins v. Sykes, ante,* 147.

Error and remanded.