L. J. POWELL (ORIGINAL PARTY PLAINTIFF) AND WIFE ZELPHIA POWELL (ADDITIONAL PARTY PLAINTIFF) v. L. F. MILLS AND WIFE HAZEL MILLS, AND CHARLES MILLS.

(Filed 29 April, 1953.)

**1. Trespass to Try Title § 1—**

Plaintiff in an action for the recovery of land and for trespass thereon must rely upon the strength of his own title which he must establish by some recognized legal method and, nothing else appearing, has the burden of proving title in himself and defendant's trespass.

**2. Same—**

In all actions involving title to real property, title is conclusively presumed to be out of the State unless it be a party to the action, G.S. 1-36, but there is no presumption in favor of either party to the action.

**3. Adverse Possession § 9c—**

A deed constitutes color of title only to the land designated and described in it, and the party claiming under a deed as color of title must by proof fit the description in the deed to the land it covers.

**4. Deeds § 1a: Boundaries § 1: Frauds, Statute of, § 9—**

A deed must contain a description of the land sought to be conveyed either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the deed refers, and when the language of the description is patently ambiguous, parol evidence is not admissible to aid the description.

**5. Boundaries § 3c—**

Ordinarily, lines should be run with the calls in the regular order from a known beginning, and reversing a call may be resorted to only when the terminous of a call may not be ascertained by running forward but can be fixed with certainty by running reversely the next succeeding line.

**6. Boundaries § 5a—Description in this case held patently ambiguous and insufficient to convey land.**

A call "thence south 36 deg. east to the back line" and "thence with said back line to B. F. Ormond's line in Poley Bridge Branch" *is held* too indefinite to convey land within the meaning of the statute of frauds, there being nothing in the instrument identifying "back line" or pointing to a source from which evidence *aliunde* may be sought to make certain such uncertainty, and the call to a point in the line of the contiguous property "in Poley Bridge Branch," in the light of the evidence, being insufficient to locate any point in said line, and there being no distance called for to reach the next corner, there is no definite point from which a reverse call could be run to make the description certain.

**7. Adverse Possession § 9c—**

A deed which is inoperative because the land intended to be conveyed is incapable of identification from the description therein is inoperative as color of title.

**8. Adverse Possession § 5—**

A deed inoperative because the land intended to be conveyed is incapable of identification from the description therein is inoperative to fix known and visible lines and boundaries as a basis for a claim of adverse possession for twenty years.   G.S. 1-40.

**9. Trespass to Try Title § 3—**

Where, in an action to recover possession of land and for trespass, plaintiffs fail to show title to any part of the land claimed by defendants, defendants' motion to nonsuit should be allowed.

APPEAL by defendants from *Harris, J.,* at October Term, 1952, of CRAVEN.

Civil action to recover of defendants damage for alleged wrongful trespass by defendants upon lands of plaintiffs, described in the complaint, and to restrain defendants, their servants and agents from further trespass thereon.

The original plaintiff alleges in his complaint (1) that at all times mentioned therein he was the owner of and in possession of the following described land, viz.: "All that certain tract of land lying, situate and being in No. 3 Township, Craven County, on the road running from Fort Barnwell to Dover, and described as follows: BEGINNING at the back line ditch between A. B. Hawkins and C. Marshburn and runs south 14 deg. east to the end of said ditch, and thence south 12 deg. east 96 poles to a pine on the east side of said road; thence south 36 deg. east to the back line and thence with said back line to B. F. Ormond's line in Poley Bridge Branch; thence northwardly with Poley Bridge Branch to the line ditch between A. B. Hawkins and C. Marshburn; thence down said ditch to the place of BEGINNING, containing 60 acres, more or less, and being the same land conveyed by J. J. Boyd and others to A. S. Powell, 10 September, 1907, by deed registered in the office of the Register of Deeds at Craven County in Book 165, page 543; and conveyed by said A. S. Powell to plaintiff 3 December, 1917, by deed registered in said office in Book 219, page 59, and 14 September, 1926, by deed registered in said office in Book 274, page 136; the dividing line between plaintiff's land and the land of W. H. Ormond having been established by agreement made 27 October, 1944, registered in said office in Book 381, page 141; and (2) that on or about 3 June, 1948, defendants wrongfully and unlawfully entered upon said land, with their servants and agents, and there cut and carried away and converted to their own use valuable trees and timber, and threaten to continue such wrongful trespass unless restrained by the court," etc. Restraining order was signed.

Defendants, in answer filed, say that they have no knowledge or information as to any chain or title to any land claimed to be owned by plaintiff, and deny that they have trespassed upon lands described in the com-

plaint,—admitting that defendants did cut some timber on "land owned by L. F. Mills and/or wife Hazel Mills," approximately three-quarters of a mile north of any land owned or claimed to be owned by the plaintiffs.

And for further defense and counterclaim defendants aver that the title to the property of L. F. Mills and wife comes from original grant #632, dated 1 January, 1793, to John Lane, signed by Richard Dobbs Speight, the Governor, duly recorded in office of Secretary of State at Raleigh, in Book No. 76 at page 450, conveying 150 acres, which is inclusive of property owned by the defendants.

Defendants, by permission of court, amended their answer, reaffirming each and every allegation of their answer, and averred that "they own and are in possession of that certain tract of land as shown on the court map in this cause and embraced, as indicated on the map, within the following bounds: Beginning at the point indicated by the letter A and running thence to B, to C, to 5, to 4, to D, to E, to F, to G and back to A. If plaintiff claims any land embraced within said bounds, such claim or right thereto by said plaintiff is expressly denied." And defendants further deny that they have cut or removed any timber of any value from any lands owned by plaintiff.

A compulsory reference was ordered at October Term, 1950.

Pending hearing before referee, Mrs. Zelphia Powell, wife of L. J. Powell, was made party plaintiff, and adopted as her complaint the complaint of her husband.

Upon the hearing before the referee plaintiff introduced into evidence, among others, (1) a deed from A. B. Hawkins and wife, Josephine Hawkins, to John Wilson and J. J. Boyd, dated 23 December, 1905, registered in Book 161 at page 177 of deed records of Craven County, and (2) a deed from John Wilson and wife and J. J. Boyd and wife to A. S. Powell, dated 10 September, 1907, registered in Book 165, at page 543, of deed records of Craven County, in each of which the description of the land purported to be conveyed thereby is the same as that set forth in the complaint of plaintiff, except that in the call "then with said line to B. F. Ormond's line in Poley Bridge Branch," as worded in the complaint, the preposition "in" is used in lieu of the preposition "of" appearing in the deed from Hawkins to Wilson and Boyd.

The court surveyor, as witness for plaintiff, identified the court map, and pointed out on it the plaintiff's contention as to the location of the land described in the above deeds, to be represented by figures 1 to 7, to 10, to 9, to 6, to 5, to 4, to 8, to 3, to 2, and back to 1. (A copy of the map is hereto attached.)

Plaintiff also offered in evidence two deeds from A. S. Powell and wife to L. J. Powell and wife Zelphia Powell, the first dated 3 December, 1917,

POWELL *v.* MILLS.

which contains specific description of a 35-acre tract of land purporting
to be conveyed in which there are these calls: "then with the said S 28 E
to Furney White's land, then with his line to Poley Bridge Branch, then
with the said branch to the beginning,—the run of the said branch being
the line"; and the second of which, dated 14 September, 1926, contains

the description of two tracts, one containing 15 acres, more or less, and the other containing 25 acres, more or less. The second of these tracts is described as being "known as the Boyd and Wilson tract of land," followed by a specific description substantially the same as that in the deeds from Hawkins to Wilson and Boyd, and from Boyd and Wilson to A. S. Powell, as above recited. The difference appears after the call "then south 36 E to the back line." There follows these calls: "then with said line to L. J. Powell's corner in said line; thence with L. J. Powell's line to his corner on Dover Road to L. J. Powell's line on said road on other corner." As to these deeds, plaintiff L. J. Powell testified: "I claim the property under the first deed, back to the back line and then to Poley Bridge Branch; that includes both pieces . . . I bought the first part of it and then bought the last part of it, and then I bought all of it . . . My father acquired this land from Boyd and Wilson . . . All the land in controversy came out of the land bought from Boyd and Wilson." And plaintiffs offered no evidence to locate the lines of the lands described in the deeds to them from A. S. Powell and wife—independent of their contention as to location of the lands as described in deed from Boyd and Wilson to A. S. Powell.

The surveyor pointed out on the map the W. H. Ormond land south of the Dover-Fort Barnwell Road, formerly owned by B. F. Ormond, as being represented by the letters A to G to figure 3. The evidence offered by plaintiff also tends to show that the Powell and the Ormond land as so represented adjoin. And there is some oral testimony tending to show that there was other B. F. Ormond land in the vicinity of Horse Pen Corner figure 5 on the court map.

And there is evidence tending to show that the head of Poley Bridge Branch is at the letter G shown on the map, and there is evidence that the head of it is near the figure 4. But, regardless of whether the head of it is at the letter G, or near the figure 4, all the evidence tends to show that Poley Bridge Branch runs in a northerly direction to and across the Dover-Fort Barnwell Road at 3, on to 2, and to 1—as shown on the map, and that it is the dividing line between the land claimed by Powell and the Ormond land, at least northerly from letter G shown on the map.

Plaintiffs offered evidence of acts of ownership exercised by them within the area represented on the map by the figures 10, to 9, to 6, to 5, to 4, to G, and back to 10. And there is evidence of acts of ownership exercised by defendants within the same area. It is unnecessary to undertake to recapitulate the testimony,—in view of the decision on this appeal.

After hearing, as above related, the referee filed report in which he made findings of fact, and reached conclusions of law in favor of defendants. Plaintiffs filed exceptions to both the findings of fact, and the

conclusions of law, and demanded a jury trial, upon these issues tendered by them, to wit:

"1. Are plaintiffs the owners of and entitled to the possession of the lands shown on the court map and bounded by a line beginning at the figure 10 and running thence to 6, thence to 5, thence to 4, thence to 8, thence to letter G, thence to letter F, and thence to figure 10?

"2. If so, have defendants trespassed upon said lands, as alleged by plaintiffs?

"3. What damages, if any, are plaintiffs entitled to recover of defendants?"

When the case came on for hearing in Superior Court at term time it was submitted to the jury upon these issues, and on the evidence offered by the parties and taken on the hearing before the referee.

The jury, for verdict, answered the first issue "Yes," the second "Yes," and the third "$225.00."

Thereupon the presiding judge rendered judgment adjudging that the plaintiffs are the owners of and entitled to the possession of the lands shown on the court map bounded as set out in the first issue, and ordered that a copy of the judgment, together with a copy of the map be certified by the Clerk of Superior Court to the register of deeds of Craven County, and that same be registered, and that plaintiffs recover of defendants the sum of $225.00, with interest, and the cost of the action to be taxed by the Clerk.

Defendants excepted thereto, and appeal to Supreme Court, and assign error.

*L. T. Grantham, W. B. R. Guion, and R. A. Nunn for plaintiffs, appellees.*

*Henry P. Whitehurst, J. D. Paul, and Bland & Bland for defendants, appellants.*

WINBORNE, J.   While there are thirty-seven assignments of error based upon exceptions to rulings on matter of evidence adverse to defendants, and while the case on appeal discloses numerous rulings of the court on objections to matters of evidence to which assignments of error are not brought forward, from which it might be assumed that the rules of evidence were thrown to the winds, and the floodgates opened to admit incompetent testimony, the decision on this appeal turns on the assignments of error based upon exceptions to the rulings of the court in denying defendants' motions for judgment as of nonsuit at the close of plaintiffs' evidence, and renewed at the close of all the evidence.   And these assignments effectively challenge the sufficiency of the description set out in the complaint to identify the land claimed by plaintiffs.

When in an action for the recovery of land and for trespass thereon defendant denies plaintiff's title and defendant's trespass, nothing else appearing, issues of fact arise both as to title of plaintiff and as to trespass by defendant,—the burden as to each being on plaintiff. *Mortgage Corp. v. Barco,* 218 N.C. 154, 10 S.E. 2d 642; *Smith v. Benson,* 227 N.C. 56, 40 S.E. 2d 451; *Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673; *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692.

In such action plaintiff must rely upon the strength of his own title. This requirement may be met by various methods which are specifically set forth in *Mobley v. Griffin,* 104 N.C. 112, 10 S.E. 142. See also *Prevatt v. Harrelson,* 132 N.C. 250, 43 S.E. 800; *Moore v. Miller,* 179 N.C. 396, 102 S.E. 627; *Smith v. Benson, supra,* and many others, including *Locklear v. Oxendine, supra,* and *Williams v. Robertson, supra.*

Moreover, in all actions involving title to real property, title is conclusively presumed to be out of the State unless it be a party to the action, G.S. 1-36, but "there is no presumption in favor of one party or the other, nor is a litigant seeking to recover land otherwise relieved of the burden of showing title in himself." *Williams v. Robertson, supra,* and cases cited. In the light of such presumption, apparently plaintiffs in the present action, assuming the burden of proof, have elected to show title in themselves by adverse possession, under known and visible lines and boundaries, and under color of title, which is a method by which title may be shown. But in pursuing this method a deed offered as color of title is such only for the land designated and described in it. *Davidson v. Arledge,* 88 N.C. 326; *Smith v. Fite,* 92 N.C. 319; *Barker v. R. R.,* 125 N.C. 596, 34 S.E. 701; *Johnston v. Case,* 131 N.C. 491, 42 S.E. 957; *Smith v. Benson, supra; Locklear v. Oxendine, supra; Williams v. Robertson, supra.*

Moreover, decisions of this Court generally recognize the principle that a deed conveying land within the meaning of the statute of frauds, G.S. 22-2, must contain a description of the land, the subject matter of the deed, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the deed refers. The office of description is to furnish, and is sufficient when it does furnish means of identifying the land intended to be conveyed. Where the language is patently ambiguous, parol evidence is not admissible to aid the description. But when the terms used in the deed leave it uncertain what property is intended to be embraced in it, parol evidence is admissible to fit the description to the land. Such evidence cannot, however, be used to enlarge the scope of the descriptive words. The deed itself must point to the source from which evidence *aliunde* to make the description complete is to be sought. See *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E.

2d 889, where the authorities are cited.  See also *Searcy v. Logan,* 226 N.C. 562, 39 S.E. 2d 593; *Plemmons v. Cutshall,* 234 N.C. 506, 67 S.E. 2d 501; *Linder v. Horne, ante,* 129; *Cherry v. Warehouse, ante,* 362.

In *Smith v. Fite, supra,* this headnote epitomizes the opinion of the Court by *Smith, C. J.:* "Where a party introduces a deed in evidence, which he intends to be used as color of title, he must prove that its boundaries cover the land in dispute, to give legal efficacy to his possession."  In other words, the plaintiff must not only offer the deed upon which he relies, he must by proof fit the description in the deed to the land it covers,—in accordance with appropriate law relating to course and distance, and natural objects called for as the case may be.

The general rule as to this is that in order to locate a boundary of land, the lines should be run with the calls in the regular order from a known beginning, and the test of reversing in the progress of the survey should be resorted to only when the terminus of a call cannot be ascertained by running forward, but can be fixed with certainty by running reversely the next succeeding line.  *Lindsay v. Austin,* 139 N.C. 463, 51 S.E. 990; *Land Co. v. Lang,* 146 N.C. 311, 59 S.E. 703; *Hanstein v. Ferrall,* 149 N.C. 240, 62 S.E. 1070; *Cornelison v. Hammond,* 224 N.C. 757, 32 S.E. 2d 326; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366; *Locklear v. Oxendine, supra; Williams v. Robertson, supra.*

Now adverting to the description set out in plaintiffs' complaint, we are constrained to hold that it is too vague to admit of proof at least as to any land south or southeast of the Dover-Fort Barnwell Road.  There does not appear to be any controversy as to the beginning corner, that is, that it is at the figure 1 north of the road.  And it would seem that the next two calls, "south 14 deg. east to the end of said ditch, and thence south 12 deg. east 96 poles to a pine on the east side of said road" take the line to the pine, at point 7.  But the terminus of the next call "thence south 36 deg. east to the back line" is vague and indefinite.  Whose back line was intended?  There is nothing in the description in the deed pointing to a source from which evidence *aliunde* may be sought to make certain such uncertainty in the call.  Moreover, the next call "thence with said back line to B. F. Ormond's line in Poley Bridge Branch," in the light of the evidence, adds no clarity to the vagueness of the preceding call.  B. F. Ormond's line, if it be the W. H. Ormond land, runs with Poley Bridge Branch north to the road, and the call to "B. F. Ormond's line in Poley Bridge Branch" might terminate at any point between the letter G and the road at figure 3,—if it be that the headwaters of Poley Bridge Branch is at the letter G.  Indeed, if the headwaters be at the Horse Pen Corner, figure 5, and B. F. Ormond owned land down to that corner, the terminus of the call might be at any point from figure 5 to the

Dover-Fort Barnwell Road, figure 3. Furthermore, the next call "thence northwardly with Poley Bridge Branch to the line ditch between A. B. Hawkins and C. Marshburn" crosses the road, and terminates at point 2 north of it where Poley Bridge Branch intersects with the line ditch between A. B. Hawkins and C. Marshburn. This description may be sufficiently definite to admit of proof to make certain the terminus of this line. But even so, no distance is called for to reach the road at point 3. Hence by surveying the call in reverse, from figure 2, the road would be reached at point 3, but how far up the Poley Bridge Branch would the line continue? The description in the deed does not show how far. Thus there is no definite point in the description from which a survey in reverse would make certain the forward running of the lines.

In this connection, decisions of this Court hold that a deed which is inoperative because the land intended to be conveyed is incapable of identification from the description therein is inoperative as color of title. *Katz v. Daughtrey,* 198 N.C. 393, 151 S.E. 879, and *Thomas v. Hipp,* 223 N.C. 515, 27 S.E. 2d 528, and cases cited.

In the *Katz case, supra,* Stacy, C. J., writing for the Court expressed the principle in this manner: "If the land intended to be conveyed cannot be identified from the description contained in the deed, it follows as a necessary corollary, that as the deed is, for this reason, inoperative, it is equally inoperative as color of title. If the land cannot be identified for one purpose, how can it be for another?" Cases are cited in support.

Hence in the present action the description relied on by plaintiffs being inoperative as color of title, is equally inoperative to fix "known and visible lines and boundaries," G.S. 1-40, as basis for a claim of adverse possession for twenty years.

Finally, the amended answer of defendants is in effect a disclaimer to any land not embraced within the lines therein designated. See *Hipp v. Forester,* 52 N.C. 599; *Crawford v. Masters,* 140 N.C. 205, 52 S.E. 663. And plaintiffs, not having shown that the description relied on by them covers any part of the land so designated by defendants, the motion of defendants for judgment as of nonsuit on the issues tendered by plaintiffs should have been allowed. Therefore, the judgment below is

Reversed.