JOHN HARRIS AND WALTER JENKINS v. CITY OF RALEIGH.

(Filed 25 November, 1959.)

**1. Municipal Corporations § 33:    Trespass to Try Title § 3—**

In an action to establish plaintiffs' title to certain land and to have assessments for public improvements made by defendant municipality declared invalid on the ground that the paved area was not a street but plaintiffs' property, the burden is upon plaintiffs to establish their cause of action.

**2. Boundaries § 5—**

Where the owner of land has subdivided same and prepared and recorded a map showing lots and named streets, the location of a street so shown may not be established by the description in a deed in the chain of title executed subsequent to such division by the original owner, since a junior instrument may not be used to establish the location of a boundary fixed by a senior instrument.

**3. Boundaries § 3—**

Where the description in a deed calls for a beginning corner and then only courses and distances from such corner without otherwise pointing

out any other corner or referring to any corner of an adjacent tract, the beginning corner may not be established by reversing the call.

**4. Adverse Possession § 15—**

A deed cannot constitute color of title to lands not embraced within its description.

**5. Adverse Possession § 23—**

Plaintiffs can acquire no title by adverse possession when their own evidence establishes that less than twenty years elapsed between the time they took possession and the institution of the action and that the claim could not be maintained under color of title.

**6. Municipal Corporations § 30—**

A municipality does not have to pave the entire area owned by it for street purposes in order to assess land abutting the street for improvements.

APPEAL by plaintiffs from *Thompson, J.,* February, 1959 Civil Term, of WAKE.

This is an action to try title to a small piece of land in Raleigh. Plaintiffs allege they own a lot described in deeds to them as:

"BEGINNING at a point in the western side of Butler Street, in the Village of Oberlin, Alonza Haywood's northeast corner, and running thence westwardly along Haywood's northern boundary line, 260 feet; thence northwardly 60 feet; thence eastwardly in a line parallel with said Haywood's line 260 feet to the western boundary line of Butler Street; thence southwardly with said Butler Street, 60 feet to the BEGINNING."

Defendant admits plaintiffs' ownership of the described property except that part which was mapped and designated as Butler Street when the area known as San Domingo was subdivided. Butler Street is now known as Chester Road.

The area in controversy was paved as a part of Butler Street or Chester Road. A part of the cost of paving was assessed against plaintiffs as abutting property owners. They challenge the validity of the assessment for that the area paved was not a street but their property. A restraining order issued to prevent enforcement of the paving assessment.

At the conclusion of plaintiff's evidence defendant's motion to nonsuit was allowed and the restraining order was dissolved. Plaintiffs appealed.

*Bailey & Dixon for plaintiff appellants.*
*Paul F. Smith for defendant, appellee.*

RODMAN, J.  The pleadings placed the burden on plaintiffs to establish ownership of the land in controversy.

The stipulations and evidence suffice to establish: Amelia Whitaker and other members of the Whitaker family, on 14 October 1873, conveyed to W. H. Morgan a parcel of land "designated as Lots 45, 46, and 47 on said (San Domingo) map fronting on Butler Street or Avenue, adjoining the lands of Tom Johnson and Solomon Taylor and containing about one and one-quarter acres"; a map of San Domingo, prepared for the Whitaker estate showing a subdivision into lots and named streets was duly recorded in the office of the Register of Deeds of Wake County; when the land was sudivided and when W. H. Morgan purchased from the Whitakers, San Domingo was not an incorporated area, but by enlargement of Raleigh's boundaries it became a part thereof in 1920; Raleigh took over the maintenance of Chester Road in 1940 and paved it in 1953; by duly recorded deeds, title to lots 45 and 46 shown on the subdivision passed from W. H. Morgan and vested in Parker Realty Company; it, in 1915, conveyed to John Ivey by the description set out in the complaint; plaintiffs trace title to John Ivey by deeds containing the identical description given in the deed to him; they acquired title in 1938; in 1915 Alonza Haywood was the owner of lot 44 shown on the map of San Domingo; that map shows Butler Street to be the eastern boundary of lots 44, 45, 46, and 47; lot 46 is shown to have a frontage of 32 feet on Butler Street, the others 105 feet each; all extend westwardly 250 feet from the street.

Defendant does not challenge plaintiffs' location of the western, or back line of lots 45, 46, and 47.

To establish ownership of the disputed area, plaintiffs begin at the southwest corner of lot 45 and measure eastwardly 260 feet, the distance given in the deed to them. This they say establishes the location of Alonza Haywood's northeast corner in Butler Street, the beginning corner called for in the deed to them. They maintain the right to so locate their beginning corner because, as they say, there was in fact no Butler Street when San Domingo was subdivided, and in fact no street in actual existence until 1940 when the City took over and assumed maintenance. They contend the evidence shows the stake marking Alonza Haywood's northeast corner was destroyed in 1953 when the paving work was in progress, and since they are unable to establish that corner they are entitled to begin at a subsequent corner called for in their deed and reverse to locate their beginning.

The reasoning is fallacious. The parties trace their rights to a common source, the Whitakers. The San Domingo map told where and how to locate Butler Street if the back lines of the lots were known, and Butler Street did not in fact exist on the ground.

The divergent rights were acquired prior to 1915. Plaintiffs cannot, by using a description originating in 1915 or subsequent thereto, locate a line previously established. *Coffey v. Greer,* 249 N.C. 256, 106 S.E. 2d 209, *s. c.* 241 N.C. 744, 86 S.E. 2d 441; *Goodwin v. Greene,* 237 N.C. 244, 74 S.E. 2d 630; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366; *Cornelison v. Hammond,* 224 N.C. 757, 32 S.E. 2d 326; *Euliss v. McAdams,* 108 N.C. 507.

Not only do plaintiffs not have the right to use the junior instrument to establish the location of a boundary fixed by a senior instrument; but to begin at a posterior corner for the purpose of locating the anterior corner, it must appear that the anterior corner is not established and known and the location of the posterior corner is known and established. That condition does not here exist. True the back, or western line of lot 45 is known and established. No controversy exists with respect to its location. But the description in the instrument which they would use does not refer to the back line of lot 45. It directs the line run from the beginning corner on Butler Street "westwardly along said Haywood's northern boundary line, 260 feet; thence northwardly 60 feet" etc. It points to nothing which marks the termination of the 260 feet. It is a pure assumption on the part of plaintiffs that the distance called for terminated at the southwest corner of lot 45 shown on the map of San Domingo. That assumption is based on the fact that the grantor was the owner of lot 45 and is not known to have owned any other land. But if he had intended to stop his deed at the western line of lot 45 or to extend it to that line, that fact should appear in the deed. Where the 260 feet ends can only be found by beginning on Butler Street at Haywood's northeast corner. The very description itself demonstrates that there can be no reversal of the calls to establish the location of the beginning corner. The subsequent corners, by the terms of the description, must be located by running in the order given. *Batson v. Bell,* 249 N.C. 718, 107 S.E. 2d 562; *Powell v. Mills,* 237 N.C. 582, 75 S.E. 2d 759; *Plemmons v. Cutshall,* 234 N.C. 506, 67 S.E. 2d 501; *Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673; *Lindsay v. Austin,* 139 N.C. 463.

The parties stipulated that the City took over the maintenance

of the street in 1940. Plaintiffs acquired title in 1938. Manifestly they could not have acquired title by adverse possession. If their description does not cover the land in controversy, the deed does not constitute color of title. Less than twenty years elapsed between the time plaintiffs took possession and the beginning of the action. Plaintiffs' evidence demonstrates they acquired no title by adverse possession.

The City did not have to pave the entire area owned by it for street purposes in order to assess plaintiffs as abutting property owners. They could pave only a portion of the street and make a valid assessment. *Salisbury v. Barnhardt,* 249 N.C. 549, 107 S.E. 2d 297; *Anderson v. Albemarle,* 182 N.C. 434, 109 S.E. 262.

The judgment is affirmed.