McGEE, Judge.
Plaintiffs filed an action in January 2001 to remove a cloudupon their title under N.C. Gen. Stat. § 14-10. Plaintiffs claim ownership of five acres of land in Pender County through a series of deeds dating back to 1944. Defendants filed a counterclaim alleging that they owned eighteen acres, including the five acres claimed by plaintiffs, through a chain of title dating back to 1901, or alternatively, by adverse possession.
Plaintiffs' series of deeds describe their five acres of real property as:
BEGINNING at a stake in the run of Mike's Branch and running thence with the old Neighborhood Road and known as the old Wright Avenue a Western course to a pine, Ajax Shepard's corner and running thence a Southern course with Ajax Shepard's line to a stake in the edge of a small bay; and running thence a Northeastern course to the run of Mike's Branch; thence with Mike's Branch as it meanders to a stake, the beginning corner. Containing 5 acres, more or less, and being the same land listed for taxation in the name of Mandy Nixon, and being the same lands conveyed and described in a deed from L.R. Bradshaw, Commissioner, to J.T. Gresham, Jr. dated April 12, 1956 and recorded in Book 333 at Page 64 in the Office of the Register of Deeds for Pender County.
The above-described property (the five-acre tract) was conveyed on 1 November 1944 by a quitclaim deed to Wallace Sidbury, who was the father of plaintiffs: Empie H. Sidbury (Sidbury), and his brothers, John Wallace Sidbury, Jr. and Porrie C. Sidbury. In 1956, the five-acre tract was sold as a result of a tax foreclosure, but it was purchased by Wallace Sidbury's lawyer, J.T. Gresham, who conveyed it back to Wallace Sidbury in a deed recorded on 20 September 1956. The five-acre tract was conveyed to plaintiffs by general warranty deed recorded on 23 December 1987. Defendants' chain of title begins in 1901 with a deed from William T. Justice to W.T. Sidbury (no relation to plaintiffs). The land was described in a handwritten deed as follows:
Beginning at a stake in Osker Wright's line with Neighborhood Road easterly to a small branch with said branch South and westerly to the run of Mike's Branch, with said branch to the (indecipherable) line with said line to a stake the corner of Osker Wright's line with said line North 19 West is the beginning.
Later that same year, W.T. Sidbury conveyed to Osker Wright property described as:
One half of piece or parcel of land [known] as the land deeded to W.T. Sidbury by Willy Justice the same one half of the above name. Land to be adjoining the land of Osker Wright. The above land is bound by Mike's Branch and Osker Wright the Neighborhood Road. Commencing at a stake in Osker Wright's line running with Neighborhood Road easterly to a small branch with said branch south and westerly to the run of Mike's Branch with said branch to the Leguin line with said line to stake the corner of Osker Wright's line with said line North 19 W to the beginning.
This property, described as "[o]ne half of piece or parcel of land [known] as the land deeded to W.T. Sidbury by Willy Justice the same one half of the above name[,]" is the property that was eventually conveyed to defendants by A.J. Shepard (Shepard).
Plaintiffs' evidence tended to show that Sidbury and his father farmed a portion of the five-acre tract from the 1930's until 1959. Sidbury testified that there had been a fence between the five-acre tract and the land farmed by Shepard. Sidbury also testified that his father had rented the Sidbury house located on the five-acre tract to at least two persons between 1959 and 1987,when the land was conveyed to Sidbury and his brothers.
Plaintiffs presented to the jury a videotaped deposition of Johnie Garrason (Garrason), a land surveyor, who had surveyed all of the tracts claimed by the parties. Garrason's testimony established that all but 1.646 acres of the five-acre tract claimed by plaintiffs was included in the eighteen acres claimed by defendants (i.e., there was a little more than a 3.4 acre overlap in the properties claimed by the parties). Garrason based his survey on his understanding of defendants' deed. He reasoned that since defendants' deed described "[o]ne half of the piece or parcel" of the lot bounded by Mike's Branch and Osker Wright's line, which was approximately eighteen acres, defendants only owned a little more than nine acres. He thus concluded that plaintiffs' five-acre tract, as described by their deed, was included within the remaining nine acres claimed by defendants, but he could not specifically place two sides of plaintiffs' property.
Defendants' evidence tended to show that many of defendants had grown up on the property and had always believed that their land (i.e., Shepard's land) extended from Osker Wright's land to the "small branch" and "Mike's Branch." Defendants testified that members of their family, including Shepard and some of the defendants, farmed the land and kept animals on the land. They testified that the only fence on the property was one used to pen in hogs and other animals; no fence marked the border of the property. They further testified that Sidbury and his family lived on the property by permission of Shepard who was Sidbury'sgrandfather.
At the close of plaintiffs' evidence and again at the close of all the evidence, defendants moved for a dismissal and a directed verdict. Both motions were denied. Defendants appeal.
Plaintiffs filed an action to remove a cloud on title under N.C. Gen. Stat. § 41-10 (2003). As with an action to quiet title, a plaintiff must establish "valid title in [himself]." Chappell v. Donnelly, 113 N.C. App. 626, 629, 439 S.E.2d 802, 805 (1994) (citing Heath v. Turner, 309 N.C. 483, 488, 308 S.E.2d 244, 247 (1983)). Defendants argue that plaintiffs did not meet this burden because they failed to locate the boundaries of the property they claimed. Defendants assert that the trial court thus erred in denying defendants' motion to dismiss and for a directed verdict at the close of all the evidence.
A directed verdict is properly granted when there is not sufficient evidence, viewed in the light most favorable to the non-moving party, for the issue to go to the jury. Chappell, 113 N.C. App. at 628, 439 S.E.2d at 804-05. A motion for directed verdict should be granted where a plaintiff fails to present evidence on all the elements of the plaintiff's cause of action. Id. at 628-29, 439 S.E.2d at 805.
A plaintiff may prove valid title either through the Real Property Marketable Title Act or through one of the traditional methods of proving title, id., including adverse possession. See Mobley v. Griffin, 104 N.C. 112, 115, 10 S.E. 142, 142-43 (1889) (identifying six traditional methods of proving title). The RealProperty Marketable Title Act provides that a property owner has a marketable title when, at the time of the action, the owner, "alone or together with his predecessors in title, shall have been vested with any estate in real property" that has been of public record for at least thirty years. N.C. Gen. Stat. § 47B-2 (2003). Additionally, plaintiffs seeking to prove title must establish "the on-the-ground location of the boundary lines which they claim." Chappell, 113 N.C. App. at 629, 439 S.E.2d at 805 (citations omitted); see also Allen v. Conservative Hunting Club, 14 N.C. App. 697, 700, 189 S.E.2d 532, 533-34 (1972) (holding that in an action to remove cloud upon title, "[t]he plaintiffs must fit the descriptions in their chain of title and in the defendant's chain of title to the land claimed and show that the land claimed is embraced within their respective descriptions."). Furthermore, if a plaintiff "introduce[s] deeds into evidence as proof of title, [the plaintiff] must `locate the land by fitting the description in the deeds to the earth's surface.'" Chappell, 113 N.C. App. at 629, 439 S.E.2d at 805 (quoting Andrews v. Bruton, 242 N.C. 93, 96, 86 S.E.2d 786, 788 (1955)). This last element reflects the requirement that deeds conveying property adequately identify and describe with some certainty the property to be conveyed. Overton v. Boyce, 289 N.C. 291, 293, 221 S.E.2d 347, 349 (1976).
Though plaintiffs do not expressly mention the Real Property Marketable Title Act, they use it as their primary means to prove title. The five-acre tract was conveyed to Sidbury's father by deed recorded 20 September 1956, and it was then conveyed toplaintiffs by general warranty deed recorded 23 December 1987. Thus, plaintiffs, along with their predecessors in title, have been vested with an estate in the disputed real property for the thirty years required under the Real Property Marketable Title Act.
Plaintiffs did not, however, place the boundaries of their five-acre tract on the ground. Plaintiffs' deed included the following as part of its description: "a Western course to a pine, Ajax Shepard's corner and running thence a Southern course with Ajax Shepard's line to a stake in the edge of a small bay," but plaintiffs failed to locate on the ground both the pine and the stake in the bay.
Plaintiffs assert Garrason put their property on the ground as evidenced by his survey of their land. Garrason's survey, however, purported to give plaintiffs more than nine acres, rather than the five acres, more or less, described in their deed. Garrason testified that the lot bounded by Mike's Branch and Osker Wright's line should be split in half because defendants' deed only described "[o]ne half of the piece or parcel[.]" Garrason thereby concluded that there were two plots of land, each over nine acres: one belonging to defendants and one belonging to plaintiffs. In his survey, Garrason identified a pine stump at what he discerned to be the dividing line between plaintiffs' and defendants' properties. Garrason admitted, however, that he was not certain that this stump marked the actual dividing line between the two properties and testified that the dividing line could have been ten to fifteen feet from the pine stump. Moreover, Garrason could notlocate the stake at the edge of the small bay. He testified that he "looked, and looked, and looked, and [he] . . . figured where . . . half the area would come out, and [he] . . . couldn't find anything there, with a metal detector . . . so [he] put [a stake] in there." Garrason offered a boundary line that was inconsistent with plaintiffs' deed, and he could not locate at least one of the key markers of the property. Thus, he did not place the property on the ground.
Because plaintiffs failed to place on the ground, or otherwise identify with certainty, their five-acre tract, they failed to present sufficient evidence on all the elements of proving title through the Real Property Marketable Title Act.
Plaintiffs now argue that they proved title through adverse possession, but plaintiffs did not clearly plead or allege adverse possession in their complaint. Nor did they satisfy all the elements of adverse possession in presenting their evidence. Since plaintiffs had at least color of title to the land, they must show "both actual and adverse possession for the full seven-year period" required by N.C. Gen. Stat. § 1-38 (2003) to establish title through adverse possession. Phipps v. Paley, 90 N.C. App. 170, 175, 368 S.E.2d 21, 25, disc. review denied, 323 N.C. 175, 373 S.E.2d 114 (1988). In addition to being adverse, possession must be "open, notorious, and continuous, and the extent of it must be shown by known and visible boundaries." Locklear v. Savage, 159 N.C. 236, 238, 74 S.E. 347, 348 (1912).
Plaintiffs arguably produced evidence on all the elements ofadverse possession other than visible boundaries. "There must be known and visible boundaries such as to apprise the true owner and the world of the extent of the possession claimed." McDaris v. "T" Corporation, 265 N.C. 298, 303, 144 S.E.2d 59, 63 (1965). The visible boundary element of adverse possession, like proving title under the Real Property Marketable Title Act, requires a plaintiff to locate the description of the deed on the ground it covers. Locklear v. Oxendine, 233 N.C. 710, 715, 65 S.E.2d 673, 677 (1951); Smith v. Fite, 92 N.C. 319, 321 (1885) (holding that a person seeking to prove adverse possession of a particular parcel of land must "ascertain its boundaries so as to give legal efficacy to his possession for the prescribed period[]"). By not locating the description of their land on the ground, plaintiffs failed to present sufficient evidence to prove valid title through adverse possession.
Plaintiffs did not present sufficient evidence to overcome defendants' motion for a directed verdict. The trial court thus erred in denying defendants' motion for a directed verdict. We reverse and remand this matter to the trial court for entry of an order granting defendants' motion for a directed verdict.
Reversed and remanded.
Chief Judge MARTIN and Judge WYNN concur.
Report per Rule 30(e).