ASHEVILLE LAND COMPANY v. JOHN H. LANGE ET AL.

(Filed 22 December, 1908.)

1. Ejectment—Trespass—Evidence—Summons—Acts of Ownership.

When plaintiff sues in ejectment and has shown title to the *locus in quo* in himself, it is competent for him to show acts of forcible trespass thereon of defendant, which occurred after the issuance of the summons, of such character as to indicate a claim of the right of possession.

2. Same—Judgments—Nonsuit.

A judgment as of nonsuit upon the evidence will not be granted in an action involving title to land, when the plaintiff has shown a forcible trespass upon the *locus in quo* by the defendant after summons was issued, and that defendant immediately entered, assumed dominion and exercised acts of ownership.

3. Same—Pleadings.

When the defendant, in an action involving the title to land, denied a wrongful and unlawful withholding of the possession of the *locus in quo*, and the testimony shows that plaintiff has title, and that defendant, after the summons was issued, stopped the work of plaintiff's employees by the use of a gun, claimed the land and hauled dirt thereon to cover piers which the plaintiff was having constructed, there is evidence sufficient to take the question of title to the jury.

4. Ejectment—Title—No Adverse Claim—Pleadings—Allegation of Possession.

Since the statute of 1893 (Revisal, sec. 1889) it is not necessary to allege that defendant was in possession, in an action involving title to land.

ACTION tried before *Peebles, J.,* and a jury, at March Term, 1908, of BUNCOMBE.

Plaintiff corporation sets forth two causes of action, alleging: (1) That it was the owner of the *locus in quo,* a lot in the town of Asheville, described by metes and bounds; that defendants were in the wrongful and unlawful possession of the land, etc. (2) That defendants are in the wrongful possession *and claim to own a part of said lot;* that plaintiff contracted with certain builders to build stone piers and a hotel on said lot, and that it, for that purpose, entered thereupon and was proceeding to erect said building; that defendants entered upon said lot, and

with force and violence drove the plaintiff's agents and con-
tractors and its employees from said lot and prevented them
from continuing in the prosecution of their work, and that they
continued to obstruct and prevent said work, etc.

Defendants denied all of the allegations in the complaint,
except the sixth, and this they denied, "except as stated in the
answer." For a further defense they allege that defendant
Charles Kearns is the owner of the following-described land
(proceeding to describe a lot in the city of Asheville, known as
the Glen Rock Hotel, giving courses and distances); that the
plaintiff is in the possession of a part of the premises described
in the further defense, and unlawfully and wrongfully withholds
possession, etc. Plaintiff replied to the new matter, denying
same.

After the suit was instituted the corporation conveyed the
land described in the complaint to one L. Blomberg, who was
made a party plaintiff. Blomberg introduced a deed from the
Asheville Land Company to himself, duly recorded, and a deed
from the Southern Improvement Company to Halyburton. He
also introduced evidence tending to show that Town Branch had
changed its channel after the date of the Halyburton deed, by
reason of freshets and the filling in with stone and dirt by the
owner of the hotel and the city in such way as to throw to the
side of the branch on which defendants' lot is located a strip of
earth of about 18 feet in width, at the point of the beginning
corner and for some indefinite distance up said branch. Both
parties claimed under a common source. He also introduced
one Plemmons, a rockmason, who testified that, some ten or
twelve years before, he was engaged in work for J. D. Bostick,
near the Glen Rock Hotel, building piers, right at the back of a
little house claimed by Mr. Bostick, four or five feet back of the
house, about forty or fifty feet from the street. "While I was
at work there defendant Lange came out and said that it was his
property and we were building on his land, and I just got away
from there. He was on his place, just standing there." Plain-
tiff Blomberg testified that he heard defendant Lange testify
on the former trial. He was asked whether he did not come
out with a gun, and "he kinder turned and laughed and said he

had a gun, or something like that, and he as much as said that he ordered them off the grounds back of the house, a part of the land in dispute; that Bostick left." The witness was asked, on redirect examination, "How did you cover them (the piers) up?" Answer: "When the depot was built he hauled dirt over there, and one day he had three or four teams hauling dirt, covering up the piers. There were three or four of my piers on the line of the house, running right back, and I told Mr. Lange that I forbid him to cover up those piers." This testimony was, upon defendants' objection, excluded, because it referred to what was done after suit was brought. Plaintiff excepted.

The answer of defendants was introduced by plaintiff.

At the close of plaintiffs' evidence his Honor, upon defendants' motion, rendered judgment of nonsuit, for that the plaintiffs had introduced no evidence that defendants were in possession when the action was instituted. Plaintiff excepted and appealed.

*Frank Carter, H. C. Chedester, Davidson, Bourne & Parker* for plaintiffs. ·

*J. H. Merrimon* and *J. G. Merrimon* for defendants.

CONNOR, J. The first assignment of error presents the question whether evidence of the defendant's conduct, with respect to the land upon which it is alleged that he committed a trespass prior to the date of the summons, subsequent thereto, may be heard to show that the trespass was committed in the assertion of ownership and was followed by possession. When the plaintiff sues in ejectment, or under The Code system of pleading and practice sues to recover possession, it is elementary that he must show title and, if denied, possession at the date of the summons. This the plaintiff concedes, but he insists that, having shown a trespass, an invasion of his possession, he may, for the purpose of showing that it was committed with the intention of asserting an adverse title, introduce evidence of acts of ownership and dominion on and over the land subsequent to the trespass and the beginning of his action. It would seem that, if the defendant drove the plaintiff away from the land by violence or threats, and that suit was brought immediately, it should be

competent for him to show the animus with which the trespass was committed, by showing that he followed up the trespass by actual occupation and assertion of ownership. If in this case the plaintiff should show that the title to the land in controversy is in him, and that on the day named in the complaint defendant drove him from the occupancy or possession and immediately entered and assumed dominion, exercising acts of ownership, although subsequent to the date of the summons, why should plaintiff's action be dismissed and he be compelled to start again? If defendant does not claim to own the land and assert that his unlawful conduct was a simple trespass, he can disclaim and put an end to the action. It does not come with good grace from him to say that, although he has followed up his wrongful act by actual possession, the plaintiff must be nonsuited because he sued immediately upon the commission of the trespass. It is said: "If A enters on the land of B, without ousting him or doing some act equivalent to an ouster, he will not thereby acquire a seizin as against B, unless B elects to consider himself disseized." 3 Washburn Real Prop., 137. "The possession of the defendant may be proved by his declaration, his occupation of the premises by residing thereon, or by any other acts of ownership which the case affords." Tyler on Eject., 473; *ib.*, 875. "It is often very difficult and sometimes practically impossible to distinguish between acts which constitute merely trespasses on the land and acts amounting to a claim of title or an exercise of ownership over it; and, though trespass and ejectment are distinct remedies which must not be confounded, it is not an easy task to find the dividing line. The practice of encumbering actions for the trial of title with this issue of the possession of the defendant often results in the miscarriage of the action and places the claimant in an extremely awkward position. Thus, questions of fact involving the title are sometimes submitted to the jury, together with disputed facts as to the possession or occupancy of the lands by the defendant, and the jury, under the practice in some States, is allowed to render a general verdict." Sedg. & Wait Trial Title, 236. With us the two issues are submitted. If the defendant

does not wish to litigate the title he can disclaim, and if the plaintiff fails to show a trespass or an ouster he will be taxed with the cost.

Independent, however, of this phase of the case, we think that in more than one aspect the plaintiff was entitled to go to the jury. It is manifest from the pleadings that the defendant denies a wrongful and unlawful withholding of possession of the *locus in quo.* The testimony, if believed, shows that plaintiff's agent was working upon it, building piers, preparatory to the erection of a hotel; that defendant Lange came and said that it was his property—they were building on his land—not to build on it; that by this conduct plaintiff was prevented from proceeding with the work. Plaintiff Blomberg says that he heard defendant's testimony, on a former trial, in regard to the shotgun. This, followed by the evidence of hauling dirt on the land and covering the piers, shows clearly that defendant is assuming ownership of the property and assuming dominion over it.

Whether the action is treated as one for the recovery of possession or to quiet title, pursuant to the act of 1893, ch. 763 (Revisal, sec. 1589), the plaintiff was entitled to go to the jury and have the controversy ended. The Code system of pleading swept away the technicalities which in the old action of ejectment so often obstructed the trial of title to land. This was followed by the statute of 1893, which removed the necessity for alleging the defendant was in possession. The plaintiff may now set out his claim of title, and if defendant disclaims any adverse claim the plaintiff pays the cost, and the title as between them is settled. This remedial statute should be liberally construed to advance the remedy and permit the courts to bring the parties to an issue.

An interesting account of the legislation in the different States removing the difficulties which under the ancient writs used in England prevented parties from trying title is to be found in Sedg. & Wait Trial Title, sec. 80, *et seq.:* "If plaintiff sues for a trespass, and alleges title, defendant may join issue on title and admit the trespass, or, if he wish, he may deny the trespass, and thus the real question in controversy is presented. So, in an action for the recovery of possession, if defendant does not

set up an adverse title he may deny possession, and the contro-
versy will be narrowed to that question. He should not be per-
mitted to trifle with the court by litigating the title and denying
possession. No one knows better than he whether he is in pos-
session of the land in controversy." In this case, pending for six
years and tried once (145 N. C., 311), the plaintiff is now non-
suited, leaving the real question in controversy unsettled. This
we do not think is allowable under our system of procedure.
Either the defendant was committing an unjustifiable wrong
when by his conduct he stopped plaintiffs' employees from work-
ing on the land, or he did so in the honest assertion of an adverse
claim to the property. In either aspect of the case the plaintiff
is entitled to appropriate relief. If defendant does not claim to
own the strip of land he should be required to say so; if he does
so claim, the controversy should be tried and settled. The judg-
ment of nonsuit must be set aside and the case tried upon its
merits.

New Trial.