WACHOVIA BANK AND TRUST COMPANY v. JOHN G. MILLER AND WIFE, PEARL L. MILLER; GEORGE J. MILLER; NICK J. MILLER AND EVAGELIA J. MILLER.

(Filed 2 November, 1955.)

1. **Boundaries § 6—**

    Where the boundary line called for in a deed is actually located on the premises is an issue of fact.

2. **Quieting Title § 1—**

    G.S. 41-10 is a remedial statute and is to be liberally construed to advance the remedy and permit the courts to bring the parties to an issue.

3. **Adverse Possession § 19—**

    In an action to establish title to land, the failure of plaintiff to show valid record title to the disputed area does not justify nonsuit when plaintiff alleges title by seven years adverse possession under color of title, and introduces supporting evidence.

4. **Adverse Possession § 9a—**

    While an instrument that passes title is not color of title, where the deeds under which plaintiff claims convey title only to a part of the land described therein, but do not convey valid title to the area in dispute, such deeds are color of title as to the disputed area.

5. **Adverse Possession § 9b—**

    Possession taken under color of title is commensurate with the limits of the tract to which the instrument purports to convey title provided there has been no adverse possession of the tract in part or in whole by another, and possession under such deed which is exclusive, open, continuous and

adverse for seven consecutive years will ripen into an unimpeachable title to the whole, title being out of the State.   G.S. 1-38.

**6. Same—**

A deed is not color of title beyond the boundaries set forth in the instrument.

**7. Same—**

Color of title, without adverse possession thereunder, does not operate to give constructive possession.

**8. Adverse Possession § 9c—**

A party claiming under a deed as color of title must fit the description in the deed to the land it conveys by proof in accordance with appropriate law.

**9. Boundaries §§ 3b, 3e—**

As a general rule, course and distance must give way to a call for a natural boundary, and a call to the line of an adjacent tract, if well known and established, is a call to a natural boundary.

**10. Adverse Possession § 7—**

The party claiming adverse possession under color of title may tack the possession of the predecessors in his chain of title.

**11. Adverse Possession § 19—**

In this trial by the court under agreement of the parties, there was competent evidence to support the judge's findings of fact that the possession of defendants and their predecessors in title was not adverse to the ownership of the land in dispute, which was claimed by plaintiff and its predecessors in title under color of title.

**12. Adverse Possession §§ 5, 19—**

Plaintiff claimed title to the area in dispute under color of title, and introduced in evidence deeds in its chain of title which called for the line of the adjacent lot as the boundary.   The line of the adjacent lot was known and established, and plaintiff introduced evidence of actual or constructive possession up to that line.   *Held:* In trial by the court under agreement of the parties, the evidence supports the court's findings that the line of the adjacent lot was the boundary to which plaintiff claimed under color of title, plaintiff's deeds not being offered in evidence for the purpose of establishing record title to the disputed area or the purpose of establishing the corner by reference to the line of a junior conveyance.

**13. Trial § 55—**

In a trial by the court under agreement of the parties, the court's findings of fact are conclusive if supported by competent evidence, notwithstanding the introduction of evidence to the contrary by the adverse party.

**14. Adverse Possession § 21—**

In this trial by the court under agreement of the parties, the court found that plaintiff and its predecessors in title went into possession upon the delivery of the deeds under which plaintiff claimed under color of title,

and that plaintiff and its predecessors in title had been in continuous adverse possession of the *locus in quo* from a date more than seven years prior. *Held:* The findings are sufficient to support judgment in plaintiff's favor, notwithstanding the absence of specific finding that the deeds in plaintiff's chain of title were color of title and of adverse possession thereunder for seven years.

**15. Appeal and Error § 40d—**

A finding of fact relating to a matter not alleged in the pleading must be stricken on exception and assignment of error.

**16. Same—**

A finding of fact not supported by any evidence in the record must be stricken on exception and assignment of error.

**17. Boundaries § 9—**

In an action to establish a boundary between contiguous tracts, the burden of locating the true boundary line is on plaintiff.

**18. Ejectment § 15—**

In an action to establish title to land, plaintiff must rely upon the strength of its own title and not upon the weakness or want of title in the defendants.

DEVIN, E. J., and WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendants from *Clarkson, J.,* May Term 1955 of MECK-LENBURG.

Statutory action to quiet title to realty against an adverse claim.

The parties waived in writing their right to a trial by jury, and consented to a trial of the issues of fact by the court.

These are the material findings of fact by the court:

*One.* The property in dispute is a rectangular tract of land 5.44 feet by 100 feet, and shown on the plat attached to the complaint marked Exhibit "A," as lying between the lines E-F and B-D marked in red upon the plat.

*Two.* The plaintiff, and its predecessors in title, have an unbroken record title to the land in dispute from deed of W. D. Duckworth *et al.* to James J. Sims *et al.* dated 24 March 1881, and properly recorded, up to and including deed from E. C. Griffith, and wife, to plaintiff dated 9 March 1953, and duly recorded.

*Three.* Thomas Cavalaris and John J. Lampros, plaintiff's predecessors in chain of title, were conveyed a lot of land, which included the land in dispute, by deed of the Penn Mutual Life Insurance Co., dated 21 June 1943, and properly recorded: upon the delivery to them of this deed they entered into possession of this lot, and occupied the same

adversely to all the world until a sale of this lot to the plaintiff by E. C. Griffith, its agent.

*Four.* This land was conveyed by deed to E. C. Griffith, as agent for plaintiff, by Thomas Cavalaris, and wife, and John J. Lampros, and wife; the deed bearing date of 4 March 1953 is properly recorded. Upon delivery of this deed E. C. Griffith, as agent for plaintiff, entered upon the lot, and occupied it adversely to the world as agent for plaintiff, until he conveyed it to plaintiff.

*Five.* On 9 March 1953 E. C. Griffith, and wife, conveyed this lot by deed properly recorded to plaintiff, which took possession of the lot, and has occupied it adversely to the world to the present.

*Six.* The H. G. Springs line referred to in the descriptions contained in deeds constituting plaintiff's chain of title is the line B-D shown on the plat attached to the complaint, and marked Exhibit "A," which is the eastern boundary of plaintiff's lot.

*Seven.* The western boundary of the property described in the deed from Zetta M. Ross, *et al.* to the defendants, and dated 24 March 1945, is the line B-D shown on the plat marked Exhibit "A," attached to the complaint.

*Eight.* Any occupancy of the land in dispute by the defendants Miller, and their predecessors in title, was not under visible metes and bounds, nor was it continuous or hostile, and, therefore, it was not adverse to the ownership of the land in dispute by plaintiff, and its predecessors in title.

*Nine.* Any occupancy of the land in dispute by the Ross heirs, grantors in the quitclaim deed to the defendants, which deed is dated 9 February 1955 subsequent to the institution of this action, was not under visible metes and bounds, nor was it hostile or continuous, and, therefore, it was not adverse to the ownership of the land in dispute by plaintiff's predecessors.

The court made these conclusions of law:

*One.* The plaintiff is the owner of, and entitled to possession of the lot set forth in the complaint, and more particularly described as follows:

"Beginning at a point in the easterly margin of South Church Street, which point is S. 45-18-30 W. 198 feet from the point of intersection of the easterly margin of South Church Street and the southerly margin of West Trade Street, and runs thence with the easterly margin of South Church Street S. 45-18-30 W. 100 feet to a point; thence S. 48-10-45 E. 103.24 feet to a stake; thence with the westerly line of the property of John G. Miller and others N. 45-08-40 E. 100 feet to a stake in said line; thence S. 48-10-30 E. 103.44 feet to the point of Beginning, which

includes the rectangular tract of land 5.44′ x 100′ which was in dispute in this case."

*Two.* The defendants to deliver immediate possession of the strip of land in dispute to plaintiff.

The defendants excepted, and appealed, assigning errors.

*Bell, Bradley, Gebhardt & DeLaney for Plaintiff, Appellee.*

*Maurice A. Weinstein and George J. Miller for Defendant, Appellants.*

PARKER, J. The controversy in this cause is the proper location of the boundary line between two adjacent lots. It is so stated in the briefs of the parties. Penn Mutual Life Insurance Co., by deed dated 21 June 1943, conveyed to Thomas Cavalaris and John J. Lampros a certain lot, they conveyed by deed this lot to E. C. Griffith, and he conveyed it by deed to plaintiff. In all of these deeds the rear or eastern boundary line of this lot is described as the Springs line. Plaintiff contends that the line B-D shown on the plat attached to the complaint, marked Exhibit A, is the Springs line: the defendant contends the line E-F shown on the same plat is the Springs line. The land in dispute is a rectangular tract of land 5.44 feet wide and 100 feet long. According to these deeds, the rear or eastern boundary line of plaintiff's lot is the Springs line. Where the Springs line is actually located on the premises is an issue of fact. *Lance v. Cogdill,* 236 N.C. 134, 71 S.E. 2d 918; *Greer v. Hayes,* 216 N.C. 396, 5 S.E. 2d 169; *Davidson v. Arledge,* 88 N.C. 326.

The defendants assign as error the failure of the court to sustain their motion for judgment of nonsuit, for the reason that the plaintiff has neither alleged nor shown color of title and adverse possession for seven years under color of title. Plaintiff alleged in its complaint that it "is the owner of a valid, fee simple and record title" to this lot, and sets forth the three deeds above mentioned. Plaintiff states in its brief: "There was no attempt to show title out of the State, or to prove that the deed to Cavalaris conveyed a valid title to any part of plaintiff's land." Plaintiff's evidence shows the correctness of this statement in its brief. Plaintiff bases its claim on seven years adverse possession under color of title. G.S. 1-38. This action was brought under the provisions of G.S. 41-10 to quiet title: a remedial statute liberally construed "to advance the remedy and permit the courts to bring the parties to an issue." *Land Co. v. Lange,* 150 N.C. 26, 63 S.E. 164. Since there is only one cause of action for one specific thing, we see no reason why, if the plaintiff fails to establish its right to recover by a valid,

record title, it should be denied the privilege of resorting to seven years adverse possession under color of title.

Defendants in support of their contention that plaintiff has not shown color of title cites this language from *Justice v. Mitchell,* 238 N.C. 364, 78 S.E. 2d 122: "An instrument that passes title is not color of title." The defendants contend that the deed to plaintiff conveyed a valid, legal title to this lot, except as to the area of land in dispute. Plaintiff's evidence does not show that the deed to Cavalaris and Lampros conveyed to them a valid, legal title to this lot, and the plaintiff makes no such contention. A grantor can convey to his grantee no better title than he has. *Lovett v. Stone,* 239 N.C. 206, 79 S.E. 2d 479. Plaintiff offered in evidence the deeds from Penn Mutual Life Insurance Co. to Cavalaris and Lampros, from them to Griffith, and from him to it. These deeds on their face purport to convey this lot by definite lines and boundaries. The description of this lot in these deeds is substantially the same, and in all of them plaintiff's rear or eastern boundary line is described as the Springs line. Plaintiff by proof fitted the description in these deeds to the lot. These deeds are color of title for the land designated and described therein. *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692; *Davidson v. Arledge, supra.* Even if we concede that these deeds did convey a valid, legal title to this lot, except as to the disputed area, as contended by the defendants, which we do not, still these deeds would be color of title as to the area in dispute, provided the area in dispute is embraced within the description of these deeds. *Ingram v. Colson,* 14 N.C. 520.

It is thoroughly established law that when a person having color of title to a particular tract of land, which the written instrument, that is color of title, describes by known and visible lines and boundaries, enters into and adversely holds a part of such tract under the authority ostensibly given him by such instrument asserting ownership of the whole, his ensuing possession is not limited to the portion of the tract as to which there has been an entry or actual possession, but is commensurate with the limits of the tract to which the instrument purports to give him title, provided that at the inception, and during the continuance of the possession, there has been no adverse possession of the tract in whole or in part by another: and in this State such possession, if exclusive, open, continuous and adverse for seven consecutive years, the title being out of the State, will ripen into an unimpeachable title to the whole, provided there has been and is no adverse possession of the tract in whole or in part during such seven consecutive years by another. G.S. 1-38; *Wallin v. Rice,* 232 N.C. 371, 61 S.E. 2d 82; *Price v. Whisnant,* 232 N.C. 653, 62 S.E. 2d 56; *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117; *Ray v. Anders,* 164 N.C. 311, 80 S.E. 403; *Simmons v.*

*Box Co.,* 153 N.C. 257, 69 S.E. 146; *Haddock v. Leary,* 148 N.C. 378, 62 S.E. 426; 2 C.J.S., Adverse Possession, Sec. 183, where cases are cited from many jurisdictions. Beyond such boundaries set forth in the written instrument his possession cannot go under color of title. *Frank v. Smith,* 138 Neb. 382, 293 N.W. 329, 134 A.L.R. 458; 1 Am. Jur., Adverse Possession, p. 910. "A deed is never color of title for more than it professes to convey." *Carson v. Carson,* 122 N.C. 645, 649, 30 S.E. 4.

Color of title, without adverse possession thereunder, does not operate to give constructive possession. *Carswell v. Morganton,* 236 N.C. 375, 72 S.E. 2d 748.

A party introducing a deed in evidence, which he intends to use as color of title must fit by proof the description in the deed to the land it covers in accordance with appropriate law relating to course and distance and natural objects called for as the case may be. *Williams v. Robertson, supra; Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673.

"It is true that the general rule is that course and distance must give way to a call for a natural boundary, and that the line of an adjacent tract, if well known and established, is a natural boundary." *Lumber Co. v. Hutton,* 152 N.C. 537, 68 S.E. 2. ". . . another's line called for, if known and established, is usually treated as a monument." *Newkirk v. Porter,* 237 N.C. 115, 74 S.E. 2d 235.

The plaintiff can tack its possession of the lot with the successive possession of Cavalaris and Lampros and Griffith for the purpose of showing a continuous adverse possession for seven years because there is a privity of estate or connection of title between the several occupants. *Newkirk v. Porter, supra; Locklear v. Oxendine, supra.*

The evidence shows these facts: Plaintiff's lot is designated as Lot 2, the defendants' lot as Lot 1. Cavalaris collected rents on Lot 2 from the date of purchase on 21 June 1943, until they conveyed it to Griffith, an agent of plaintiff, on 4 March 1953. Griffith conveyed this lot to plaintiff on 9 March 1953, which has collected rent on it since. When Cavalaris and Lampros bought Lot 2, the disputed area was being used by the tenants and owners of Lot 1, and later a one-story concrete building attached to a building on Lot 1 was erected on the disputed area. Miller never told Cavalaris he owned the disputed area. Cavalaris never discussed the matter with Miller, because he didn't know where his back line was located on the premises.

In 1945 the heirs of John D. Ross conveyed Lot 1 to the defendants by deed: the disputed area is not included in the description in this deed. Charles B. Ross, a son of John D. Ross, handled Lot 1 from his father's death in 1934, until it was sold to the defendants. He never claimed to own the disputed area of land, nor authorized any one to

claim it for him. The Ross heirs in 1955, after the institution of this action, gave the defendants a quitclaim deed for the disputed area.

W. M. Malcolm, a carpenter, in 1949 or 1950 did some patch work on the concrete building on the disputed area for Mr. Miller, who said he didn't want to spend much money on it, because it was not his property, and that someone was going to let him use it.

Spero Athans, a witness for the defendant, testified that he was a tenant on Lot 1 from 1920 to 1944, paying rent to John D. Ross, and after his death to his heirs; that there was a coal bin in the disputed area which he used; that he built a fence on it to prevent pilfering from the rear of his restaurant; others used this area back of his restaurant to park cars; he told no one this area belonged to him or his landlord; no one objected to his using it.

John G. Miller, one of the defendants, testified he bought Lot 1 in 1945, and knew the disputed area was not embraced in the description of his deed; in 1950 he built the concrete building on this area; he personally moved into the building on Lot 1 in 1948 and since has used the spot where the concrete building is; that he never told Malcolm he didn't want to spend any money in this area, because it wasn't his.

There is competent evidence in the record to support the judge's findings of fact that any occupancy of the land in dispute by the defendants Miller and by the Ross heirs was not adverse to the ownership of the land in dispute by plaintiff and its predecessors in title.

The next question presented is whether there is competent evidence to support the judge's findings of fact that the Springs line is the line B-D shown on the plat attached to the complaint, and marked Exhibit A.

Lot 1 was Lot 19 of the real estate of H. G. Springs, deceased, as sold by commissioners. W. A. Blankenship, a registered engineer, surveyed the defendants' Lot 1 from a description the defendants gave him. He surveyed the entire area. Lot 1 goes beyond Lot 2 to West Trade Street, and on West Trade Street the building on Lot 1 is adjacent to other buildings. Blankenship testified the line between the defendants' property and the adjacent property is well defined by two independent walls, so he had little difficulty in establishing that line and projecting it to the rear part of Lot 2: that line is the line B-D on the plat marked plaintiff's Exhibit A: that he had known the front portion of this line for 30 years. He further testified that according to the map of the Springs property in 1904, which is recorded, the western line of Lot 1 is the line B-D shown on the plat marked Exhibit A. "We reached a very firm conclusion as to where the westerly property line of the H. G. Springs lot was."

In the deeds to Cavalaris and Lampros, from them to Griffith, and from him to plaintiff, Lot 2 is described as beginning at a certain place formed by the intersection of West Trade and South Church Streets and running back 98 feet to a stone, now or formerly P. M. Morris' line, thence South 49-52 West with the Springs line 100 feet to a stake in Lethco's line, thence with his line North 42-40 West 98 feet to a stake in the southeasterly margin of South Church Street, thence to the beginning. We have abbreviated the description, merely setting forth the metes and bounds that are pertinent. Blankenship surveyed Lot 2, and when he went back 98 feet from South Church Street parallel with West Trade Street on the northeast side and 98 feet back on the southwest side as called for in plaintiff's deed, he found that the lines of Lot 2 did not coincide with the line of Lot 1. He lacked 5.44 feet of reaching the line B-D on the plat marked Exhibit A on the northeasterly side and 5.24 feet of coming to the corner of Lot 1 on the southwesterly side. He was unable to find any monument or stone at the termination of the 98 feet measurement. The line E-F was put on the plat marked Exhibit A, because it is 98 feet from the easterly margin of South Church Street. The Harris map of the City of Charlotte showed in 1855 the width of South Church Street as 55 feet: its width today is 47.8 feet. According to the line of buildings North Church Street, where it enters West Trade Street, is about 5 feet wider than South Church Street where it enters into West Trade Street on the other side.

There is evidence to show that the Springs line was well known and established by two independent walls to buildings on adjacent lands and as such it was a natural boundary. *Lumber Co. v. Hutton, supra.* Such being the case, the call for 98 feet must give way to the call for the Springs line, and the distance will be extended to that line. *Newkirk v. Porter, supra; Jennings v. White,* 139 N.C. 23, 51 S.E. 799. The defendants' contention that in the chain of title to plaintiff's lot all conveyances from 1806 to 1881 describe Lot 2 as having a depth of 98 feet, and all conveyances since 1881 describe the depth as 98 feet and the rear line as the Springs line, that the boundaries set forth in senior grants control later grants, and therefore the depth cannot be extended beyond 98 feet to the Springs line, is untenable on the facts here. In this case plaintiff did not resort to a junior conveyance for the purpose of locating a corner or line referred to or described as being established by a previous deed or grant. Plaintiff's evidence located where the Springs line was on the premises from the defendants' deed and a map of the Springs property, which were not in its line of title. The deeds of former owners of Lot 2 were introduced by plaintiff for the purpose of explaining the reference to the Springs line contained in the Cavalaris and Lampros deed, and there was no proof to fit the description in all

these deeds to Lot 2. Further, plaintiff is relying upon seven years adverse possession under color of title, and not upon a connected chain of title.

There is competent evidence to show that Cavalaris, Lampros, Griffith and plaintiff had color of title to Lot 2 including the disputed area; that the Springs line referred to in their deeds is the line B-D shown on the plat marked Exhibit A, that the western boundary of Lot 1 as described in the deed of the Ross heirs to defendants in 1945 is the line B-D shown on the same plat, that Cavalaris and Lampros in 1943 under the authority ostensibly given them by their deed entered into and adversely held a part of Lot 2 until its sale to Griffith, and that their possession was commensurate with the limits of Lot 2 to which their deed purported to give them title, because there was no adverse possession of Lot 2 in whole or in part by another: that the same facts exist as to Griffith and plaintiff to the present: and that plaintiff tacking on its adverse possession to Griffith and Cavalaris and Lampros has shown adverse possession for seven consecutive years under color of title. The defendants offered evidence to the contrary, but the trial judge upon competent evidence found the facts as contended for by plaintiff. The parties having consented to a trial by the court without a jury, the findings of fact by the court, supported by competent evidence, are as conclusive as the verdict of a jury. *Lovett v. Stone, supra.*

The defendants' assignments of error as to the overruling of their motions for judgment of nonsuit made at the close of plaintiff's evidence, and renewed at the close of all the evidence are not sustained.

While the judge did not find that the deeds to Cavalaris and Lampros, to Griffith and plaintiff were color of title, he did find that the grantees in these deeds upon delivery of them entered into possession of Lot 2. Though he did not explicitly find adverse possession in these grantees for seven years under color of title, he did find continuous adverse possession in them from 1943 to the present. The judge has found the ultimate facts, which though meager, seem to be sufficient. The defendants do not contend in their brief that the findings of adverse possession are insufficient to support the judgment.

All of the defendants' assignments of error are overruled, except assignments of error Nos. 4 and 5.

Assignment of error No. 4 is to this finding of fact: "3. In its Complaint the plaintiff claims a valid fee simple title to the property in controversy (by virtue of an unbroken chain of deeds from 1881 to date and adverse possession under color of title in itself and those under whom it claims for eleven years before this action was commenced on December 14, 1954.)" This assignment of error is sustained as to the

part of the finding put in parenthesis, because no such allegations appear in the complaint.

Assignment of error No. 5 is to this finding of fact: "5. That the plaintiff and its predecessors in title have an unbroken record title to the property in question from deed of W. D. Duckworth, *et al.*, to James J. Sims, *et al.*, dated March 24, 1881, and recorded in the office of the Register of Deeds of Mecklenburg County on March 28, 1881, in Deed Book 27 at page 26, to and including deed from E. C. Griffith and wife to the Wachovia Bank and Trust Company, plaintiff herein, dated March 9, 1953, and recorded in the office of the Register of Deeds of Mecklenburg County on the 14th day of December, 1953, in Book 1653 at page 22." This assignment of error is sustained. Plaintiff states in its brief the deeds offered by it prior to the deed to Penn Mutual Life Insurance Co. were offered for the purpose of explaining the reference to the Springs line contained in the Cavalaris and Lampros deed. The plaintiff offered no evidence to fit the description contained in all these prior deeds to the descriptions contained therein. *Skipper v. Yow,* 238 N.C. 659, 78 S.E. 2d 600. In addition it seems from the *parts* of these prior deeds appearing in the record that there is not an unbroken record title from the Duckworth *et al.* deed to Griffith's deed to plaintiff.

The findings of fact that remain are supported by competent evidence and support the judge's conclusions of law. The burden of establishing the true location of the rear boundary line of Lot 2 was on the plaintiff. *Boone v. Collins,* 202 N.C. 12, 161 S.E. 543. The plaintiff must rely upon the strength of its own title, and not upon the weakness or want of title in the defendants. *McDonald v. McCrummen,* 235 N.C. 550, 70 S.E. 2d 703. The plaintiff successfully carried its burden to the satisfaction of the judge below. The judgment below will be modified by striking out the part of finding of fact No. 3 in parenthesis, and by striking out finding of fact No. 5 in its entirety and with this modification the judgment below is

Modified and affirmed.

DEVIN, E. J., and WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.