TYSON, Judge.
 

 *56
 
 Raymond Clifton Parker ("Appellant") appeals from denial of a directed verdict made at the close of Appellant's evidence and renewed at the close of all evidence dated 29 August 2016, from a judgment entered on 22 September 2016 in favor of Michael and Elizabeth DeSherbinin (collectively "Appellees"), and from an order dated 1 December 2016, denying Appellant's motion for judgment notwithstanding the verdict, to amend the judgment and for a new trial. For the following reasons, we affirm in part, reverse in part the trial court's judgment, and remand for further findings of fact.
 

 I. Background
 

 Appellant and Appellees own adjoining tracts of real property located in New Hanover County, adjacent to the Intracoastal Waterway. Appellant acquired his property, located at 19 Bridge Rd., from himself as trustee of the Grace Pittman Trust by a general warranty deed dated 21 December 1983. The deed was recorded on 16 January 1984 in Book 1243, at Page 769, in the New Hanover County Registry.
 

 The Appellees acquired their property, a vacant lot, located at 1450 Edgewater Club Rd., by a warranty deed from John Anderson Overton
 
 *57
 
 and Holland Ann Overton, dated 16 December 2013 and recorded 17 December 2013 at Book 5788, at Page 1866, in the New Hanover County Registry. Appellees purchased their property with the intent to build a residence. The Appellees hired a surveyor, Marc Glenn, to survey the property and prepare a plat.
 

 Glenn's survey (the "Glenn survey") fixed the boundary between Appellant's and Appellees' properties to be approximately 5 feet south of the line established in a survey completed in 1982 by surveyor George Losak (the "Losak survey") and recorded at Map Book 21, at Page 63, in the New Hanover County Registry. The Glenn survey shows a chain link fence installed by Appellant to the north of the boundary line between the parties' properties. The Glenn survey failed to
 
 *372
 
 reference the prior recorded Losak surveys or show any overlaps in the surveyed boundary lines.
 

 In the Spring of 2014, Appellant and Appellees met regarding the boundary line between their properties. Appellant informed Appellees of an existing issue regarding the location of the boundary line. Appellees were also made aware, by their seller, prior to their purchase, that a dispute existed over the boundary line of the two properties. Appellees' attorney closed on the property as shown in the Glenn survey, certified title thereto and obtained title insurance thereon.
 

 Appellees filed for a building permit for the residence they intended to construct at 1450 Edgewater Club Rd. Appellees attached a copy of the Glenn survey to their building permit application. Appellant complained and shared the recorded Losak survey with the New Hanover County planning and zoning office, prior to the issuance of the Appellees' building permit being issued, but to no avail.
 

 Appellees continued to build their residence based on their belief the Glenn survey correctly showed the boundary. Appellant commissioned yet another survey from Charles Riggs, a registered licensed surveyor (the "Riggs survey"), while Appellees' house was under construction.
 

 Appellant filed an initial complaint on 23 June 2015 and an amended complaint on 7 January 2016. Appellant asserted claims for negligence, nuisance, declaratory judgment to identify the boundary line, adverse possession under color of title, and adverse possession under twenty years of continuous possession. On 4 March 2016, Appellees filed an answer denying Appellant's claims and a counterclaim seeking a declaratory judgment to identify and establish the boundary line based upon their Glenn survey.
 

 *58
 
 On 29 August 2016, the case came to trial. The parties agreed to waive trial by jury. Appellant moved for a directed verdict at the close of his evidence and renewed again at the close of all evidence. These motions were denied.
 

 Among the findings of fact made by the trial court are the following:
 

 7. The Plaintiff's and Defendants' properties adjoin each other with the Defendants' property lying adjacent to and to the north of Plaintiff's property.
 

 8. A map of Edgewater Subdivision recorded in Map Book 2, at Page 113, is the original map of Edgewater Subdivision (herein "Edgewater Map") and created said subdivision.
 

 9, Plaintiff's and Defendants' properties are portions of Lots 4 and Lot 5 as shown on the map of Edgewater Subdivision, as recorded in Map Book 2, at Page 113, of the New Hanover County Registry.
 

 10. The Defendants engaged James B. Blanchard, PLS, a licensed registered land surveyor to perform a survey of the parties properties in February, 2016 to establish the dividing line between Lots 4 and 5 of Edgewater Subdivision as shown on Map Book 2, at Page 113, of the New Hanover County Registry and then to establish the boundary-line between the property of the parties.
 

 11. At the trial of this matter, Defendants presented the testimony of Mr. Blanchard who was tendered to and accepted by the Court without objection by Plaintiff as an expert witness in land surveying.
 

 12. That none of the original monuments shown on the Edgewater Map could be located by Mr. Blanchard.
 

 13. Mr. Blanchard established the dividing line between Lots 4 and 5 of Edgewater Subdivision as follows:
 

 a. By determining the northern line of Edgewater Subdivision by determining the southern line of Avenel Subdivision, the adjoining property to the north of Edgewater, as shown on a map recorded in Map Book 31, at Page 36 (herein "Avenel Map") and a map recorded in Map Book 7, at Page 14, both in the New Hanover County Registry.
 

 *59
 
 b. That concrete monuments evidencing the southern line of Avenel and the northern line of Edgewater are shown on the Avenel Map and were located by Mr. Blanchard.
 

 c. Mr. Blanchard established a line southwardly and perpendicular to the northern line of Edgewater Subdivision and along
 
 *373
 
 the eastern right of way of Final Landing Lane, as shown on the Edgewater Map, for the distance shown on the Edgewater Subdivision Map required to reach the dividing line between Lots 4 and 5 all as shown on the Edgewater Map.
 

 d. Mr. Blanchard located the northern line of the tract adjoining Edgewater Subdivision on the south, i.e. the southern line of Edgewater Subdivision, as shown on a map recorded in Map Book 11, at Page 17, of the New Hanover County Registry.
 

 e. Mr. Blanchard found monuments confirming his determination of the southern line of Edgewater Subdivision as shown on the original Edgewater Map.
 

 f. That the Edgewater Map showed a fence running along the northern line of Edgewater Subdivision and that Mr. Blanchard, during the performance of his field work, located remnants of a wire fence running along the line which he determined to be the northern line of Edgewater.
 

 14. The Defendants introduced a map by Mr. Blanchard dated July 9, 2016 (Defendants' Exhibit 21, herein the "Blanchard Map"), showing the findings of his survey and illustrating his testimony and opinions as to the location of the boundary-line between Lots 4 and 5 of Edgewater Subdivision, as well as the boundary-line between the Defendants' tract to the north described in Deed Book 5788, at Page 1866, of the New Hanover County Registry, and Plaintiff's tract to the south described in Deed Book 1243, at Page 769, of the New Hanover County Registry.
 

 15. George Losak, registered land surveyor, prepared a map for "The William Lyon Company" dated December 30, 1982, recorded in February 10, 1983 and in Map Book 21, at Page 63, of the New Hanover County Registry (the "Losak Survey") showing or purporting to show the property later purchased by Plaintiff.
 

 *60
 
 16. In August 1983, Mr. Losak prepared a second map of the property for "The Grace Pittman Trust" which was recorded on September 7, 1983 in Map Book 22, at Page 20, of the New Hanover County Registry. The purpose of this map was to correct errors contained in the Losak Survey.
 

 17. Plaintiff's deed dated December 21, 1983 and recorded on January 16, 1984 referred to the Losak Survey, recorded in Map Book 21, at Page 63, of the New Hanover County Registry.
 

 18. The Losak Survey referred to hereinabove depicts pipes and monuments which Mr. Losak ignored in determining the boundary-line between the subject properties.
 

 19. The Court finds Mr. Blanchard's testimony to be credible and correct as to the location of the boundary-line between the Plaintiff's and Defendants' properties.
 

 20. The true location of the boundary-line between Plaintiff's property and Defendants' property is shown on the Blanchard Map dated July 9, 2016 which describes the dividing line between the parties' properties as follows:
 

 ....
 

 21. Defendants purchased their property, also known as 1450 Edgewater Club Road, in December of 2013.
 

 22. At the time the Defendants purchased their property the Plaintiff and Defendants' predecessor in title were engaged in a dispute with regard to the boundary-line between the parties' tracts.
 

 ....
 

 24. The Defendants hired Polaris Surveying, LLC and Marc Glenn, PLS to survey the property and prepare a boundary survey, a site plan, and topographical survey.
 

 25. Marc Glenn determined the boundary-line to be as shown on his map recorded in Map Book 58, at Page 363, of the New Hanover County Registry, which is substantially where Mr. Blanchard locates the boundary-line.
 

 ....
 

 *61
 
 30. After closing on their property the Defendants had a chance meeting with the Plaintiff on site on or about April or May of 2014 while they were meeting with a contractor during the design phase of their home.
 

 31. During this chance meeting Plaintiff raised the boundary-line issue and told
 
 *374
 
 Defendants about the Losak Survey and the monuments Losak found, but he did not show any of the monuments to the Defendants nor did he point them out.
 

 32. In October 2014, after hiring several surveyors and attempting to hire several other surveyors Plaintiff hired Charles Riggs to survey his property and to confirm the description contained on the Losak Surveys.
 

 33. At the time Plaintiff hired Mr. Riggs the Defendants house was approximately forty percent (40%) complete.
 

 34. Charles Riggs provided the Plaintiff with a survey reflecting his findings on January 30, 2015.
 

 35. The Defendants first saw the Riggs Survey in 2015 when their house was approximately seventy percent (70%) complete.
 

 36. The New Hanover County zoning ordinance requires a minimum side set back of fifteen feet (15') for structures built on Defendants' property.
 

 37. In 1985, the Plaintiff constructed a fence along what he believed to be the northern-boundary line of his property and the southern boundary-line of Defendants' property. This area is hereto referred to [as] the "Disputed Area".
 

 38. After 2005, Plaintiff would occasionally reach through the fence or lean over the fence to trim vines growing on the property to the north of the fence, the property now owned by Defendants.
 

 39. The [D]isputed [A]rea could not be mowed because it was so overgrown. There was nothing visible to indicate anyone was in possession of or maintaining the Disputed Area.
 

 *62
 
 The trial court also made the following relevant conclusions of law:
 

 2. Plaintiff's and Defendants' chains of title and vesting deeds both establish that the dividing line between the property, i.e. their common boundary, is the dividing line between tracts 4 and 5 of Edgewater Subdivision as shown on the map of said subdivision recorded in Map Book 2, at Page 113, of the New Hanover County Registry or can only be determined by locating the line between Lots 4 and 5 of Edgewater Subdivision.
 

 3. That the true boundary-line between Plaintiff and Defendants is as shown on the Blanchard Map referred to in the findings of fact and further more particularly described as follows:
 

 ....
 

 4. That the Defendants were not negligent in purchasing their property or in proceeding with the construction of their residence on their property.
 

 5. That the construction and location of Defendants' home does not violate the fifteen foot (15') minimum side set back requirement of the New Hanover County zoning ordinance.
 

 6. That the actions of the Defendants did not constitute a substantial interference with the Plaintiff's use of his property and were not unreasonable and therefore do not constitute a nuisance.
 

 7. That Plaintiff's possession, if any, of any portion of the [D]isputed [A]rea was not open, notorious, or continuous and therefore [does] not constitute adverse possession either with or without color of title.
 

 On 22 September 2016, the trial court found in favor of Appellees on all of Appellant's claims and entered judgment. Appellant filed a motion for judgment notwithstanding the verdict, a motion to amend the judgment, and a motion for a new trial which were all denied by the trial court on 1 December 2016. Appellant timely filed an amended notice of appeal on 30 December 2016.
 

 II. Statement of Jurisdiction
 

 Jurisdiction lies in this Court from a final judgment of the superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015).
 

 *63
 

 III. Standard of Review
 

 Where trial is other than by jury, "[t]he trial judge acts as both judge and jury and considers and weighs all the competent evidence before him. If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected."
 

 *375
 

 In re Estate of Trogdon
 
 ,
 
 330 N.C. 143
 
 , 147-48,
 
 409 S.E.2d 897
 
 , 900 (1991) (emphasis and citation omitted).
 

 In a bench trial in which the superior court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable
 
 de novo
 
 .
 

 Hanson v. Legasus of North Carolina, LLC
 
 ,
 
 205 N.C.App. 296
 
 , 299,
 
 695 S.E.2d 499
 
 , 501 (2010) (citation omitted).
 

 IV. Analysis
 

 Appellant argues several of the trial court's findings of fact are unsupported by competent evidence, and several of the trial court's conclusions of law are not supported and improper in light of the relevant findings of facts and law. We address the disputed findings of fact and conclusions of law in turn.
 

 A. Finding of Fact 37
 

 Appellant argues no competent evidence supports the trial court's finding of fact 37 that "in 1985, the [Appellant] constructed a fence
 
 along what he believed to be the northern-boundary line of his property
 
 and the southern boundary-line of [Appellees'] property." (Emphasis supplied.) Appellees do not contest Appellant's assertion and testimony that the chain link fence was not placed on what Appellant considered to be the boundary line of the subject properties.
 

 After reviewing the record and stipulations of counsel at oral argument, we hold that no evidence supports the trial court's finding of fact 37 that "Appellant constructed a fence along what he believed to be the northern-boundary line of his property." The overwhelming, non-contradicted evidence indicates Appellant constructed a fence within the boundary of his property as purportedly established by the Losak survey.
 

 *64
 
 Appellant testified at trial that when he purchased the property at 19 Bridge Rd., a low fence referred to as the "neighbor's fence" was inside the boundary line on the Losak survey. The Losak survey indicates the "neighbor's fence" was one to five feet south of the boundary line purportedly established by the Losak survey.
 

 Appellant testified that sometime in 1984 or 1985, he constructed a chain link fence adjacent to the "neighbor's fence" as indicated on the Losak survey. Appellant stated he did not put the chain link fence on what he believed to be the property line, because dogwood trees and vegetation existed along the purported property line. Appellant stated he wanted enough space to remain between the purported property line and the chain link fence to prevent the neighbors from damaging the fence.
 

 Appellant additionally testified the chain link fence had not been moved since it was constructed in 1984 or 1985. Appellant submitted a photograph labeled Plaintiff's Exhibit 25.20 which showed the chain link fence as it was located in the mid-1980's and in the present day.
 

 Appellant's expert, Charles Riggs, produced a survey which shows the Losak survey line claimed by Appellant and the Blanchard survey line claimed by Appellees, and determined by the trial court to be the boundary line. The Riggs survey indicates the chain link fence was located between the disputed survey lines.
 

 Also submitted into evidence was a 5 December 2013 email from Holly Overton, Appellees' predecessor-in-title to 1450 Edgewater Club Rd., to Nicole Valentine, the buyer's agent for Appellees, which discusses the location of the chain link fence. In her email, Ms. Overton mentioned the Losak survey line and the Blanchard survey line and stated the chain link fence "is located in the middle of the two property lines mapped."
 

 As Appellant accurately argues, no testimony or other evidence supports the trial court's finding of fact 37 that "in 1985, the [Appellant] constructed a fence along what he believed to be the northern-boundary line of his property and the southern boundary-line of [Appellees'] property." Appellees' only argument against Appellant on this point is
 
 *376
 
 that because "Appellant never located the chain link fence on the ground it is impossible to locate the fence with any more precision."
 

 However, counsel agree the chain link fence is "known and visible" and is in the same location it was in when Appellant first built it in 1984 or 1985. Furthermore, no evidence was presented at trial to contradict the location of the chain link fence as surveyed by Appellant's surveyor, Riggs.
 

 *65
 
 No competent evidence supports the trial court's finding of fact 37.
 

 B. Finding of Fact 39
 

 Appellant argues insufficient evidence supports the trial court's finding of fact 39: "The [D]isputed [A]rea could not be mowed because it was so overgrown. There was nothing visible to indicate anyone was in possession of or maintaining the Disputed Area." Appellees concede competent evidence was presented of Appellant's open and continuous possession of that portion of the Disputed Area up to the location of Appellant's chain link fence.
 

 Appellant produced photographs, admitted into evidence, which tend to show the condition of the property as maintained by Appellant since he first acquired it in 1983. Appellant's unchallenged photographs depict a maintained and cleared lawn, with storage and buildings established along the fence line.
 

 An email from Holly Overton, the Appellees' predecessor-in-title to 1450 Edgewater Club Rd., to Nicole Valentine, the Appellees' agent, stated Appellant would trim bushes along the chain link fence in the Disputed Area and store his equipment. Appellees presented no evidence to dispute Appellant's continued maintenance of the property in the portion of the Disputed Area south of the chain link fence.
 

 The trial court's finding of fact 39 is not supported by competent evidence, to the extent it expresses the Disputed Area "could not be mowed because it was so overgrown. There was nothing visible to indicate anyone was in possession of or maintaining the Disputed Area".
 

 C. Conclusion of Law 7
 

 Appellant argues the trial court's conclusion of law 7 is in error based upon the law of adverse possession and the unsupported findings of fact that he did not use, maintain, and possess the Disputed Area on his property's side of the chain link fence.
 

 Conclusion of law 7 states: "That Plaintiff's possession, if any, of any portion of the [D]isputed [A]rea was not open, notorious, or continuous and therefore [does] not constitute adverse possession either with or without color of title."
 

 1. Adverse Possession for Twenty Years
 

 "In North Carolina, '[t]o acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for the prescriptive period[.]' "
 

 *66
 

 Jones v. Miles
 
 ,
 
 189 N.C.App. 289
 
 , 292,
 
 658 S.E.2d 23
 
 , 26 (2008) (citation omitted);
 
 Federal Paper Board Co. v. Hartsfield
 
 ,
 
 87 N.C.App. 667
 
 , 671,
 
 362 S.E.2d 169
 
 , 171 (1987) (holding that "[t]itle to land may be acquired by adverse possession when there is actual, open, notorious, exclusive, continuous and hostile occupation and possession of the land of another under claim of right or color of title for the entire period required by the statute.") (internal quotation marks and citation omitted).
 

 Adverse possession of privately owned property without color of title must be maintained for twenty years in order for the claimant to acquire title to the land.
 
 N.C. Gen. Stat. § 1-40
 
 (2015).
 

 Presuming,
 
 arguendo
 
 , the trial court was correct in determining the Blanchard survey line was the correct boundary line between the parties' properties of Lots 4 and 5, uncontradicted evidence proves Appellant's actual occupation and continuous use of the property on the southern half of the Disputed Area since he acquired 19 Bridge Rd. in the early 1980s.
 

 Appellant's installation of the chain link fence and his admitted maintenance of the area around and inside it since he established the fence in 1984 or 1985 shows his actual, open, notorious, exclusive and hostile use of property located on the south side of the chain link fence in the Disputed Area to
 
 *377
 
 support his claim for adverse possession under the requisite twenty year possession period.
 
 See
 

 Blue v. Brown
 
 ,
 
 178 N.C. 334
 
 , 337,
 
 100 S.E. 518
 
 , 519 (1919) (holding a fence, maintained for many years, a hedgerow and possession for 30 or 40 years justified verdict for adverse possession);
 
 Brittain v. Correll
 
 ,
 
 77 N.C.App. 572
 
 , 575,
 
 335 S.E.2d 513
 
 , 515 (1985) (holding a fence and other outbuildings showed claimants were asserting exclusive right over the disputed property);
 
 Snover v. Grabenstein
 
 ,
 
 106 N.C.App. 453
 
 , 459,
 
 417 S.E.2d 284
 
 , 287 (1992) (holding that fence in place for more than fifty years such that the possession exercised by parties on either side of it was open, notorious and continuous so as to constitute adverse possession).
 

 Appellees presented no evidence that they, or their predecessors-in-title, disputed or gave permission to Appellant to erect his chain link fence in the Disputed Area, until they sent a letter to Appellant in 2014, more than thirty years after Appellant built the fence. Appellees presented no evidence that anyone, other than Appellant, claimed, used, or maintained the area on the south side of the chain link fence after Appellant acquired 19 Bridge Rd. in 1983.
 

 The uncontradicted evidence shows Appellant's actual, open, notorious, exclusive, continuous and hostile occupation and possession of
 
 *67
 
 the area on the south side of the chain link fence within the Disputed Area for the statutory period.
 
 See
 

 Federal Paper Board
 
 ,
 
 87 N.C.App. at 671
 
 ,
 
 362 S.E.2d at 171
 
 .
 

 Appellees' counsel conceded at oral argument before this Court that Appellant's uncontradicted evidence established adverse possession to the portion of the Disputed Area on the south side of the chain link fence. The trial court erred, as a matter of law, in concluding Appellant had not established adverse possession to the south side of the Disputed Area bounded by the chain link fence.
 

 2. Color of Title
 

 Appellant argues he is entitled to the entire Disputed Area on the north and south side of the chain link fence through adverse possession under color of title.
 

 Appellant asserts the deed under which he acquired title to 19 Bridge Rd. establishes color of title so that he is entitled to the area of property located north of the chain link fence in the Disputed Area by adverse possession under color of title. By statute, when the claimant's possession is maintained under an instrument that constitutes "color of title," the prescriptive period is reduced from twenty to seven years.
 
 N.C. Gen. Stat. § 1-38
 
 (a) (2015).
 

 Appellees argue Appellant's adverse possession under color of title claim fails, as a matter of law, because the Losak survey referenced in Appellant's deed stated an incorrect boundary line.
 

 Our Supreme Court has held:
 

 A deed offered as color of title is such only for the land designated and described in it.
 
 Norman v. Williams
 
 ,
 
 241 N.C. 732
 
 ,
 
 86 S.E.2d 593
 
 [ (1955) ] ;
 
 Locklear v. Oxendine
 
 ,
 
 233 N.C. 710
 
 ,
 
 65 S.E.2d 673
 
 [ (1951) ] ;
 
 Barfield v. Hill
 
 ,
 
 163 N.C. 262
 
 ,
 
 79 S.E. 677
 
 [ (1913) ]. "A deed cannot be color of title to land in general, but must attach to some particular tract."
 
 Barker v. Southern Railway
 
 ,
 
 125 N.C. 596
 
 ,
 
 34 S.E. 701
 
 [ (1899) ]. To constitute color of title a deed must contain a description identifying the land or referring to something that will identify it with certainty.
 
 Carrow v. Davis
 
 ,
 
 248 N.C. 740
 
 ,
 
 105 S.E.2d 60
 
 [ (1958) ] ;
 
 Powell v. Mills
 
 ,
 
 237 N.C. 582
 
 ,
 
 75 S.E.2d 759
 
 [ (1953) ].
 

 ....
 

 When a party introduces a deed in evidence which he intends to use as color of title, he must, in order to give
 
 *68
 
 legal efficacy to his possession, prove that the boundaries described in the deed cover the land in dispute.
 
 Smith v. Fite
 
 ,
 
 92 N.C. 319
 
 [ (1885) ].
 
 He must not only offer the deed upon which he relies for color of title, he must by proof fit the description in the deed to the land it covers-in accordance with appropriate law relating to course and distance, and natural objects and other monuments called for in the deed
 
 .
 
 Wachovia Bank & Trust Co. v. Miller
 
 ,
 
 243 N.C. 1
 
 ,
 
 89 S.E.2d 765
 
 [ (1955) ] ;
 
 Skipper v. Yow
 
 ,
 
 238 N.C. 659
 
 ,
 
 78 S.E.2d 600
 
 [ (1953) ] ;
 
 *378
 

 Williams v. Robertson
 
 ,
 
 235 N.C. 478
 
 ,
 
 70 S.E.2d 692
 
 [ (1952) ] ;
 
 Locklear v. Oxendine
 
 ,
 
 supra
 
 ;
 
 Smith v. Benson
 
 ,
 
 227 N.C. 56
 
 ,
 
 40 S.E.2d 451
 
 [ (1946) ].
 

 McDaris v. "T" Corp.,
 

 265 N.C. 298
 
 , 300-01,
 
 144 S.E.2d 59
 
 , 61 (1965) (emphasis supplied).
 

 A plaintiff's burden at trial is also well established:
 

 [I[n order to present a prima facie case [of adverse possession], [a plaintiff] must ... show that the disputed tract lies within the boundaries of their property.
 
 See
 

 Cutts v. Casey
 
 ,
 
 271 N.C. 165
 
 , 167,
 
 155 S.E.2d 519
 
 , 521 (1967) ;
 
 Batson v. Bell
 
 ,
 
 249 N.C. 718
 
 , 719,
 
 107 S.E.2d 562
 
 , 563 (1959).
 
 Plaintiffs thus bear the burden of establishing the on-the-ground location of the boundary lines which they claim
 
 .
 
 Virginia Electric and Power Co. v. Tillett
 
 ,
 
 80 N.C.App. 383
 
 , 391,
 
 343 S.E.2d 188
 
 , 194,
 
 disc. review denied
 
 ,
 
 317 N.C. 715
 
 ,
 
 347 S.E.2d 457
 
 (1986). If they introduce deeds into evidence as proof of title, they must "locate the land by fitting the description in the deeds to the earth's surface."
 
 Andrews v. Bruton
 
 ,
 
 242 N.C. 93
 
 , 96,
 
 86 S.E.2d 786
 
 , 788 (1955).
 

 Chappell v. Donnelly
 
 ,
 
 113 N.C.App. 626
 
 , 629,
 
 439 S.E.2d 802
 
 , 805 (1994).
 

 The evidence shows Appellant acquired title to 19 Bridge Rd. pursuant to a recorded deed in 1983. Appellant's deed contains a metes-and-bounds description, and refers and incorporates into the deed the recorded survey prepared by George Losak.
 
 See
 

 Collins v. Land Co.,
 

 128 N.C. 563
 
 , 565,
 
 39 S.E. 21
 
 , 22 (1901) ("[A] map or plat, referred to in a deed, becomes a part of the deed as if it were written therein[.]").
 

 The trial court's conclusion of law 7 is not supported by the trial court's findings of fact and is in error as a matter of law, to the extent it states Appellant has not established adverse possession of the Disputed
 
 *69
 
 Area south of the chain link fence.
 
 See
 

 Hanson
 
 ,
 
 205 N.C.App. at 299
 
 ,
 
 695 S.E.2d at 499
 
 (citation omitted). There remain unresolved factual issues of whether the metes-and-bounds description contained in Appellant's deed and the incorporated reference to the Losak survey accurately describe the extent of Appellant's property.
 

 Even though the trial court found the Blanchard survey accurately shows the true boundary line between the Appellant and Appellees' properties, the court made no findings regarding whether Appellant had shown the on-the-ground boundary lines described in his deed and depicted in the Losak survey referenced therein. To determine whether Appellant has adversely possessed the remaining portion of the Disputed Area under color of title, it is necessary for the trial court to make findings of fact regarding whether Appellant can fit the description of the deed and survey under which he claims color of title to the portion of the Disputed Area north of his chain link fence.
 
 Andrews
 
 ,
 
 242 N.C. at 96
 
 , 86 S.E.2d at 788.
 

 We reverse and remand this matter to the trial court to determine whether the deed and survey under which Appellant acquired title sufficiently describes the remaining portion of the Disputed Area.
 

 3. Lappage
 

 Appellant argues this case involves an issue regarding the parties presenting overlapping claims of ownership to the Disputed Area, known as a "lappage."
 

 In a case of "lappage," a dispute between property owners where their respective titles purport to grant ownership to and over an overlapping area, the adverse claimant is not required to show actual possession of the entire area under lappage:
 

 It is thoroughly established law that when a person having color of title to a particular tract of land, which the written instrument, that is color of title, describes
 
 by known and visible lines and boundaries
 
 , enters into and adversely holds a part of such tract under the authority ostensibly given him by such instrument asserting ownership of the whole,
 
 his ensuing possession is not limited to the portion of the tract as to which there has been an entry or actual possession, but is commensurate with the limits of the tract to which the instrument purports to give him title,
 
 provided that at the inception, and during the continuance of the possession, there has been no adverse
 
 *70
 
 possession of the tract in whole or in part by another: and in this
 
 *379
 
 State such possession, if exclusive, open, continuous and adverse for seven consecutive years, the title being out of the State, will ripen into an unimpeachable title to the whole, provided there has been and is no adverse possession of the tract in whole or in part during such seven consecutive years by another.
 

 Wachovia Bank & Tr. Co. v. Miller
 
 ,
 
 243 N.C. 1
 
 , 6,
 
 89 S.E.2d 765
 
 , 769 (1955) (emphasis supplied) (citations omitted).
 

 If on remand, the trial court determines the Appellant's metes-and-bounds deed description and incorporated reference to the Losak survey contained in Appellant's deed can be located upon the ground and is sufficient to establish Defendant possessed color of title to the remaining Disputed Area, Defendant will be entitled to quiet title to the entirety of the Disputed Area, based on his undisputed adverse possession for twenty years of that portion of the Disputed Area south of the chain link fence.
 
 See
 
 id.
 

 D. Nuisance and Negligence Claims
 

 Appellant asserted claims for negligence and nuisance in his amended complaint. On appeal, Appellant's counsel abandoned these claims at oral argument. Therefore, we decline to address the parties' arguments regarding these claims. Those portions of the trial court's judgment relating to negligence and nuisance are affirmed.
 

 V. Conclusion
 

 A review of the record evidence and the testimony presented at trial and stipulations of counsel on appeal, shows some of the findings of fact made by the trial court are not supported by any competent, substantial evidence. The trial court's conclusion that Appellant was not entitled to the portion on the south side of the chain link fence within the Disputed Area by virtue of adverse possession for twenty years is error as a matter of law.
 

 Unresolved factual issues remain regarding whether Appellant's deed and the recorded Losak survey referenced and incorporated therein provide color of title to the entirety of the Disputed Area, requiring remand to the trial court for further findings of fact. Conclusion of law 7 is reversed and the matter remanded to the trial court to make additional findings of fact and conclusions of law with regard to Appellant's claim of adverse possession by color of title, and to enter judgment accordingly.
 

 *71
 
 We remand this case with instructions to the trial court to enter judgment to quiet title and award Appellant ownership to the portion of the Disputed Area on the south side of Appellant's chain link fence. If the physical location of the chain link fence is not otherwise sufficiently located, the trial court is to direct James Blanchard, P.L.S. or another licensed surveyor, to physically locate, fit and describe the location of Appellant's chain link fence. The expense of said survey shall be taxed as court costs.
 

 On remand, Appellant bears the burden of establishing that the boundaries described in his deed and the incorporated Losak survey, through which he acquired title to 19 Beach Rd., describe the portion of the Disputed Area north of the chain link fence.
 
 See
 

 McDaris
 
 ,
 
 265 N.C. at 300-01
 
 ,
 
 144 S.E.2d at 61
 
 (citation omitted).
 

 If the trial court finds and concludes that Appellant meets this burden, the trial court is to also enter judgment quieting title and awarding Appellant ownership of that portion of the Disputed Area north of the chain link fence and to the entire Disputed Area.
 
 See
 

 Wachovia Bank
 
 ,
 
 243 N.C. at 6
 
 ,
 
 89 S.E.2d at 769
 
 .
 

 The decision of the trial court is affirmed in part, reversed in part and the case is remanded for further findings as noted herein.
 
 It is so ordered
 
 .
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges BRYANT and INMAN concur.